**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CAMBRIA COUNTY ASSOCIATION FOR THE BLIND AND HANDICAPPED, INC. | ) ) ) ) |
| | ) Civil Action No. 23-cv-80-SRF |
| Plaintiff, | ) |
| | ) **JURY TRIAL DEMANDED** |
| v. | ) |
| | ) |
| AFFORDABLE WIRE MANAGEMENT, LLC., | ) ) |
| | ) |
| Defendant. | ) |
| | ) |

## AMENDED COMPLAINT

Plaintiff Cambria County Association for the Blind and Handicapped, Inc. ("Plaintiff" or "CAB"), by and through its undersigned counsel, files this Amended Complaint for patent infringement under 35 U.S.C. § 1, *et seq.*, false marking under 35 U.S.C. § 292, and false advertising under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, against Defendant Affordable Wire Management, LLC. ("Defendant" or "AWM"), and hereby alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for patent infringement brought under the patent laws of the United States of America, 35 U.S.C. § 1, *et seq.*, arising out of Defendant's infringement of CAB's intellectual property, including United States Patent No. 10,177,551 entitled "*Grounding System*" ("the '551 Patent"), a copy of which is attached hereto as Exhibit 1, and United States Patent No. 11,349,291 entitled "*Locking Cable Hanger and Method of Using*" ("the '291 Patent"), a copy of which is attached hereto as Exhibit 2, as well as an action for false marking

brought under 35 U.S.C. § 292 and false advertising under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, arising out of Defendant's misrepresenting in advertising that certain of its unpatented articles are patented.

## **PARTIES**

2.     CAB is a Pennsylvania nonprofit corporation with its principal place of business at 211 Central Ave., Johnstown, Pennsylvania 15902.

3.     CAB's charitable mission for over 80 years has been to develop and support an environment for persons with disabilities which promotes vocational and employment training, independence, and community involvement through rehabilitative, recreation and low-vision services, and education for the prevention of blindness. CAB unites vocational training and a manufacturing business producing quality products, that offers employment for persons with disabilities while ensuring worldwide customer satisfaction.

4.     Among other products, CAB develops, manufactures, and sells innovative electrical cable and wiring support and grounding systems and products in the solar energy industry.[1] CAB's solar cable management systems and products deliver safe, strong, and durable support for all types of wiring in utility scale, ground-mount solar power plants. CAB's patented cabling systems have gained wide industry acceptance, recognition and praise because they meet and exceed the most stringent quality standards, are quick and easy to install and provide significant cost savings in engineering, installation labor, materials, and long-term maintenance.

5.     AWM is a Delaware Corporation with its principal place of business at, on information and belief, 90 Washington Valley Rd., Bedminster, New Jersey 07921.

---

[1] *See* https://www.cabproducts.com/ (last visited Jul. 16, 2023).

6.      AWM can be served with process through its registered agent, Corporate Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

7.      AWM makes and/or has made, uses, offers to sell, and sells, electrical cable and wire management solutions, including various components thereof, to the solar energy industry.[2]

## JURISDICTION AND VENUE

8.      This action arises under the patent laws of the United States, 35 U.S.C. § 1, *et seq*., and under the Lanham Act, 15 U.S.C. § 1051, *et seq*.

9.      This Court has subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§1331 and 1338(a).

10.     This Court has subject matter jurisdiction over this action for Lanham Act violations under 15 U.S.C. § 1121(a).

11.     AWM is subject to this Court's personal jurisdiction at least because AWM is incorporated in this judicial district.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1400(b) at least because AWM is incorporated and resides in Delaware.

## THE PATENTS IN SUIT

13.     The '551 Patent was duly and legally issued on January 8, 2019, naming Allen Garrett Smith, Gregory Stephen Platt, and Timothy Joseph Wedding as inventors, after a full and fair examination by the United States Patent and Trademark Office from U.S. Patent Application No. 15/725,668 filed on October 5, 2017.

---

[2] *See* https://affordablewm.com/ (last visited Jul. 16, 2023).

14.     CAB is the owner by assignment of the '551 Patent with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and to enforce the '551 Patent against infringers, and to collect damages for all relevant times.

15.     The '551 Patent is valid and enforceable.

16.     As discussed further below, the claims of the '551 Patent relate to grounding systems, structured to ground cables supported by a support assembly, including a multi-function line assembly and a number of mounting assemblies.

17.     For the reasons stated below, AWM infringes, directly and/or indirectly, literally and/or under the doctrine of equivalents, at least claims 1 and 19 of the '551 Patent.

18.     The '291 Patent was duly and legally issued on May 31, 2022, naming Allen Garrett Smith, Frank Edward Hodge, David James Prasko and Timothy Joseph Wedding as inventors, after a full and fair examination by the United States Patent and Trademark Office from U.S. Patent Application No. 17/349,447 filed on June 16, 2021. The '291 Patent is a continuation of U.S. Patent Application No. 17/199,992, filed on March 12, 2021, and a continuation of U.S. Patent Application No. 15/662,474, filed on July 28, 2017, now U.S. Patent No. 10,978,861, which is a continuation of U.S. Patent Application No. 14/556,117, filed on November 29, 2014, now U.S. Patent No. 9,722,405.

19.     CAB is the owner by assignment of the '291 Patent with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and to enforce the '291 Patent against infringers, and to collect damages for all relevant times.

20.     The '291 Patent is valid and enforceable.

21.     As discussed further below, the claims of the '291 Patent relate to systems for organizing a plurality of electrical cables extending from a plurality of solar panels for use in the solar industry, including messenger wire or cable and a plurality of cable hangers.

22.     For the reasons stated below, AWM infringes, directly and/or indirectly, literally and/or under the doctrine of equivalents, at least claims 1 and 14 of the '291 Patent.

## SUBJECT MATTER OF THE '551 PATENT

23.     The '551 Patent provides technological solutions to various deficiencies in the prior art. As stated in the Field of the Invention section of the '551 Patent specification (Exhibit 1 at Col. 1. 7 – l. 14):

> The disclosed and claimed concept relates to a grounding system for a suspended cable assembly and, more particularly, to a grounding system that includes conductive elements whereby grounding cables do not need to be spliced into a conductor wire disposed adjacent a messenger wire, and, to a system wherein a multi-function line provides support and a current path.

24.     As further discussed in the Background Information section of the '551 Patent specification (Exhibit 1 at Col. 1 l. 17 – Col. 2 l. 16):

> [T]here is a need for electrical cables to extend from a power or signal source to a location of application. Such cables are usually indirectly connected and supported by a support assembly including a number of poles or piles . . . a messenger wire, and a number of cable hangers.
>
> ***
>
> For example, solar plants comprise large arrays of solar panels spread out over a large area. The solar panels are supported by a racking assembly coupled to a pile or other support. The solar panels collect the sun's rays causing a current to flow to current wires that are attached to the solar panels.
>
> ***
>
> The bundle of current wires is supported by a series of cable hangers suspended from a messenger wire. The messenger wire is supported by a number of piles extending adjacent the solar panels or which support the solar panels.

While the messenger wire is not structured to carry a current, there are instances wherein the messenger wire does carry a current. For example, lightning is known to strike the messenger wires, the current wire(s), the solar electrical equipment, the support piles, or any other construct coupled to these elements. Further, a current wire, or any other wire carrying a current can fail creating a short or other undesirable current in the supported bundle of wires. This is why a conductor or grounding wire is disposed adjacent the messenger wires . . . . The grounding conductor must be coupled to a current path to the ground.

*** 

Presently, the grounding conductor is grounded by splicing a conductor, such as, but not limited to, a copper wire into the grounding conductor and coupling the copper wire to a grounding cable or, if the piles are conductive, to each pile. That is, the copper wire must be spliced into the grounding conductor, *i.e.*, a 'grounding splice,' and, then electrically coupled to the pile or a ground cable. The process of installing the conductors, *i.e.*, splicing the copper wire into the grounding conductor and making an electrical coupling with the pile is difficult, time consuming and expensive. These are problems of the known art.

25.     The '551 Patent addresses these and other deficiencies in the prior art by providing an electrical grounding system. Specifically, the '551 Patent provides an electrical grounding system structured to ground a number of cables supported by a support assembly and including a multi-function line assembly and a number of mounting assemblies. Each mounting assembly is structured to be coupled to the multi-function line and to a conductive pile. The disclosed grounding system provides a path to ground for a current without grounding splices between a conductor and each conductive pile (or without any medial grounding splices).

26.     In this way, at least, these and other features of the '551 Patent provide tangible technical benefits over prior art systems.

**SUBJECT MATTER OF THE '291 PATENT**

27.     The '291 Patent provides technological solutions to various deficiencies in the prior art. As generally discussed in the Background of the Invention section of the '291 Patent

specification (Exhibit 2 at Col. 1 l. 22 – l. 56), in solar industries, electrical cables extend from a power source ultimately to power inverters. The patent specifically describes that:

> Such cables are usually supported by a messenger wire that are themselves independently structurally supported and strung along the planned cable route. In solar plants, direct current wires attach first to the solar panels and then run to combiner boxes before extending further to power inverters. In addition, alternating current power cables are used to power the motors that control the trackers, devices that rotate the solar panels to follow the sun in order to obtain maximum power during daylight hours.

> Prior to 2014, AC and DC cables could be bundled immediately adjacent to, and touching, one another in a wire management system for the solar panels. In the new National Electric Code of 2014, the AC and DC cables must not be immediately adjacent to one another, but must have a degree of separation from one another. Power carrying cables have a tendency to induce errors or interfere with the signal wires that are located in close proximity to them. . . .

> Because of the increased use of trackers in solar power plants, there is increased use of category five cables and other data wiring. . . . The type of wiring used in collecting data is sensitive to cables used for AC and DC power and because of that sensitivity, data wiring cannot be bundled with power cables and must be supported by a separate carrier that is at least one inch away from all power cables.

28.     As further discussed in the Background of the Invention section of the '291 Patent specification (Exhibit 2 at Col. 1 l. 57 – Col. 2. l. 9):

> In solar power plants. . . there are various sized wires and bundles of wires with an almost unlimited variety of wire bundle sizes. Bundle size is becoming very important in the manufacture of hangers to accommodate these various sizes, especially in multiple carrier hangers.

> ***

> In a solar plant there is a recent move to tracker systems which utilize more wiring than previously fixed in place systems. There is also the new NEC code which went into effect Jan. 1, 2014, which states that all AC and DC wiring must now be separated in any hanging or support system. Because of these changes, the wire

7

management systems are much more complex, especially given the
vast number of wires involved in a utility scale solar power plant.

29.    These and other features of the '291 Patent provide, among other objectives, a

new, safe and more efficient system for organizing a plurality of electrical cables extending from

a plurality of solar panels for use in the solar energy industry and, thereby offer tangible

technical benefits over prior art systems.

**COUNT I**
**INFRINGEMENT OF U.S. PATENT NO. 10,177,551**

30.    CAB incorporates Paragraphs 1 through 29, inclusive, by reference as if fully set

forth herein.

**A.  AWM's Direct Infringement of the '551 Patent**

31.    Claim 19 of the '551 Patent recites:

A mounting assembly for a grounding system structured to ground
a number of cables supported by a support assembly, said support
assembly including a plurality of spaced, conductive piles, said
grounding system including a multi-function line assembly with a
multi-function line, said mounting assembly comprising:
    a mounting body, a support coupling, and a number of multi-
        function line couplings;
    each said multi-function line couplings structured to be coupled
        to said multi-function line;
    each said support coupling structured to be coupled to a
        conductive pile; and
    wherein, when said multi-function line assembly is coupled to,
        and in electrical communication with said multi-function
        line couplings, each said multi-function line coupling
        defines a conductive path.
(Ex. 1).

32.     AWM makes and/or has made, uses, offers to sell and/or sells in the United States, and/or imports into the United States, "Hardware" assemblies and conductive Messenger Cables for use in its solar wire management solution products and systems in the United States.[3]

33.     As shown in the annotated photographs below of exemplary AWM accused products, sourced from AWM's website[4] and from AWM's 2022 product catalog, AWM's accused Hardware products constitute a mounting assembly for a grounding system as claimed in at least claim 19 of the '551 Patent, where the grounding system includes a multi-function line assembly with a multi-function line. The annotated photographs below further show a mounting body, a support coupling structured to be coupled to a conductive pile, and a multi-function line coupling structured to be coupled to a multi-function line,[5] such that when said multi-function line assembly is coupled to, and in electrical communication with said multi-function line couplings, each said multi-function line coupling defines a conductive path.

---

[3] *See* https://affordablewm.com/products-1 (last visited July 16, 2023).

[4] *See id.*

[5] AWM's product catalog identifies "1/0 AAAC 'Azusa'" and "1/0 ACSR 'Raven'" as the messenger cables or wires for supporting cable hangers as compatible with AWM's accused Hardware products. These cables or wires are conductive. *See* https://wire.buyawg.com/item/bare-aluminum-aaac-6201-alloy-1/bare-aluminum-aaac-6201-alloy/azusa (last visited July 16, 2023) *and* https://nassaunationalcable.com/products/1-0-acsr (last visited July 17, 2023).



Conductive Pile

**Hardware**

MOUNTING ASSEMBLY FOR A GROUNDING SYSTEM

Support coupling structured to be coupled to a conductive pile

Multi-function line assembly including a multi-function line

Mounting body

Multi-function line coupling structured to be coupled to a multi-function line

When said multi-function line assembly is coupled to, and in electrical communication with said multi-function line couplings, each said multi-function line coupling defines a conductive path to the conductive pile and to ground

# 30-0076-01

## Hardware

### Performance Features

- 35+ year lifetime
- Simple and repeatable installation
- Excellent corrosion resistance
- Accepts 1/0 aluminum conductors

| Detail | Specification |
|---|---|
| Part Number | 30-0076-01 |
| Material | Aluminum 6063 |
| Messenger Cable Compatibility | 1/0 AAAC "Azusa" or 1/0 ACSR "Raven" |
| Certifications | UL467 CSA22.2 No. 41-13 UL2703 Letter of Conformance for Bonding |
| Installation Method | See project specific documentation |
| Shipping and Packaging | Bulk packed in box Kitted option available |

Conductive messenger wire (*i.e.*, multi-function line)

---

### Product Views





Installed on Hex Rod (30-0042), prior to torquing hardware

Messenger Cable

Conductive mounting assembly

---

**Contact:** sales@affordablewm.com or visit www.affordablewm.com for more information.
**Disclaimer:** The information in this datasheet is for informational purposes only. Information is subject to change at any time without notice.
Patents Pending.



AWM
**Affordable**
Wire Management

34.     AWM directly infringes, literally and/or under the doctrine of equivalents, at least claim 19 of the '551 Patent in violation of 35 U.S.C. § 271(a) by making and/or having made, using, offering for sale and/or selling in the United States, and/or importing into the United States, the accused Hardware products that embody the patented invention, including at least claim 19 thereof.

**B.  AWM's Indirect Infringement of the '551 Patent**

35.     AWM also indirectly infringes at least claim 1 of the '551 Patent in violation of 35 U.S.C. § 271(b) & (c).  Claim 1 of the '551 Patent recites:

> A grounding system structured to ground a number of cables supported by a support assembly, said support assembly including a plurality of spaced, conductive piles, said grounding system comprising:
>     a multi-function line assembly including a multi-function line;
>     a number of conductive mounting assemblies, each said conductive mounting assembly structured to be coupled to said multi-function line and to a conductive pile; and
>     wherein said multi-function line assembly is coupled to, and in electrical communication with, said number of conductive mounting assemblies.
> (Ex. 1).

36.     As shown in the annotated photographs below of exemplary AWM accused products, sourced from AWM's website[6] and AWM's 2022 product catalog, AWM's accused conductive Messenger Cables[7] comprise a multi-function line assembly including a multi-function line. Further, AWM's accused Hardware products comprise a number of conductive mounting assemblies, each said conductive mounting assembly structured to be coupled to the multi-function line and to a conductive pile.

---

[6] *See id.*

[7] *See supra,* note 5.



Conductive pile

GROUNDING SYSTEM

Conductive mounting assembly

multi-function line assembly including a multi-function line

multi-function line assembly coupled to, and in electrical communication with, the conductive mounting assembly (point of electrical communication circled in yellow)

# 30-0076-01

## Hardware

### Performance Features

- 35+ year lifetime
- Simple and repeatable installation
- Excellent corrosion resistance
- Accepts 1/0 aluminum conductors

| Detail | Specification |
|---|---|
| Part Number | 30-0076-01 |
| Material | Aluminum 6063 |
| Messenger Cable Compatibility | 1/0 AAAC "Azusa" or 1/0 ACSR "Raven" |
| Certifications | UL467 CSA22.2 No. 41-13 UL2703 Letter of Conformance for Bonding |
| Installation Method | See project specific documentation |
| Shipping and Packaging | Bulk packed in box Kitted option available |

Conductive messenger wire (i.e., multi-function line)

### Product Views



52mm [2.1 in]

25mm [1.0 in]



Installed on Hex Rod (30-0042), prior to torquing hardware

Messenger Cable

Conductive mounting assembly

**Contact:** sales@affordablewm.com or visit www.affordablewm.com for more information.
**Disclaimer:** The information in this datasheet is for informational purposes only. Information is subject to change at any time without notice. Patents Pending.



**Affordable** Wire Management

37.     AWM offers to sell and/or sells and/or imports its accused conductive Messenger Cable (multi-function line assembly with multi-function line) and/or accused Hardware products (conductive mounting assemblies structured to be coupled to multi-function line and to conductive pile) to its customers in the United States. AWM's customers, in turn, directly infringe claim 1 of the '551 Patent by coupling AWM's accused conductive Messenger Cable and/or accused Hardware (*i.e.*, conductive mounting assemblies), causing the multi-function line assembly (including the multi-function line, *i.e.*, accused conductive Messenger Cable) to be in electrical communication with the conductive mounting assembly.

a.   **Induced Infringement of the '551 Patent**

38.     By correspondence dated September 29, 2020, CAB notified AWM of the '551 Patent and raised questions of whether AWM's products infringed the claims of the '551 Patent. Subsequently, on August 11, 2022, CAB notified AWM that, after further review and investigation of AWM's products, including comparison of AWM's products to the claims of the patent, CAB concluded that certain of AWM's products, particularly AWM's "Hardware" products as advertised on AWM's website, infringed one or more claims of the '551 Patent. Copies of CAB's September 29, 2020, and August 11, 2022, correspondence to AWM are attached collectively hereto as Exhibit 3.

39.     AWM has had actual notice of the '551 Patent since at least as early as September 29, 2020, and has had knowledge since at least August 11, 2022, that products that it makes and/or has made, uses, offers for sale or sells in the United States, or imports into the United States, infringe the '551 Patent.

15

40.     AWM has knowingly and intentionally induced, and continues to knowingly and intentionally induce, its customers of the accused conductive Messenger Cable and/or the accused Hardware products to directly infringe, in the United States, at least claim 1 of the '551 Patent, in violation of 35 U.S.C. § 271(b), by encouraging, instructing, and/or aiding its customers to use either or both of the accused Hardware products and/or the accused conductive Messenger Cable in a manner that infringes at least claim 1 of the '551 Patent.

41.     AWM has encouraged and continues to encourage its customers, through its product catalogs, marketing material, and website, to use either AWM's accused Hardware products or AWM's accused conductive Messenger Cable, or both, in a manner that directly infringes at least claim 1 of the '551 Patent. Further, AWM has provided and continues to provide its customers with information, including but not limited to product catalogs and specific product documentation, relating to the use and installation of its accused Hardware products and/or accused conductive Messenger Cable in a manner that directly infringes at least claim 1 of the '551 Patent.

42.     Thus, AWM has acted and continues to act with specific intent to induce its customers to directly infringe at least claim 1 of the '551 Patent.

43.     AWM has induced and continues to induce its customers to directly infringe at least claim 1 of the '551 Patent with actual knowledge of the '551 Patent, its scope, and products covered thereby, since before the date of this amended complaint and with the intent, or in willful blindness, that the induced acts directly infringe the '551 Patent.

**b. Contributory Infringement of the '551 Patent**

44.     As alleged in paragraphs 38 and 39, *supra*, AWM has had actual knowledge of the '551 Patent since before the date of commencement of this action and continues to perform

the acts alleged herein with the knowledge, or in willful blindness, that such acts contribute to

the direct infringement of the '551 Patent.

45.    AWM contributes to its customers' direct infringement of at least claim 1 of the

'551 Patent, in violation of 35 U.S.C. § 271(c), by offering to sell and/or selling and/or importing

a patented component or material and/or apparatus used to practice the invention—in particular,

either or both of AWM's accused Hardware products and accused conductive Messenger Cable.

46.    AWM sells its accused Hardware products and/or accused conductive Messenger

Cable exclusively for use, assembly, and installation in above-ground cable management projects

in the solar energy industry. AWM's accused Hardware products and/or accused conductive

Messenger Cable constitute a material part of the invention of claim 1 of the '551 Patent, and

AWM knows its accused Hardware products and/or accused conductive Messenger Cable to be

especially made or especially adapted for use in an infringement of at least claim 1 of the '551

Patent and not a staple article or commodity of commerce suitable for substantial non-infringing

use.

**C.  Willful Infringement of the '551 Patent**

47.    As alleged in paragraphs 38 and 39, *supra*, AWM has had actual knowledge of

the '551 Patent and that its acts as alleged herein constitute direct and/or indirect infringement of

at least claims 1 and 19 of the '551 Patent since before the date of commencement of this action.

AWM has intentionally continued to perform the acts as alleged herein with the knowledge, or in

willful blindness, that such acts infringe, directly or indirectly, at least claims 1 and 19 of the

'551 Patent.

48.    AWM's egregious acts of infringement of the '551 Patent as described above

have been, and continue to be, willful and deliberate and therefore warrant the award of

attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284.

      49.     CAB is entitled to recover from AWM the damages sustained by it as a result of each of AWM's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

      50.     AWM's continued infringement of the '551 Patent has caused and will continue to cause irreparable damage to CAB unless such unlawful actions are enjoined by this Court.

**COUNT II**
**INFRINGEMENT OF U.S. PATENT NO. 11,349,291**

      51.     CAB incorporates Paragraphs 1-50 by reference as if fully set forth herein.

**A.  AWM's Direct Infringement of the '291 Patent**

      52.     Claim 1 of the '291 Patent recites:

> A system for organizing a plurality of electrical cables extending from a plurality of solar panels, the system comprising:
> > a messenger wire structured to be supported a distance above the ground; and
> > a plurality of cable hangers structured to be disposed along, and suspended from, the messenger wire, each cable hanger having a plurality of cable carrying surfaces, each cable carrying surface being structured to support at least one electrical cable of the plurality of electrical cables,
> > wherein adjacent cable carrying surfaces of the plurality of cable carrying surfaces are separated by a cable carrier divider.
>
> (Ex. 2).

      53.     AWM makes and/or has made, uses, offers to sell and/or sells in the United States, and/or imports into the United States, "Messenger Cable" and "Messenger Cable Hanger"

18

products for use in its solar wire management solution products and systems in the United States.[9]

54.     As shown in the annotated photographs below of exemplary AWM products, sourced from AWM's website,[10] AWM's accused Messenger Cable and Messenger Cable Hanger products constitute a system for organizing a plurality of electrical cables extending from a plurality of solar panels as claimed in at least claim 1 of the '291 Patent.  In the photographs below, AWM's accused Messenger Cable Hangers are circled in yellow and are disposed along, and suspended from, AWM's accused Messenger Cable.





---

[9] *See* https://affordablewm.com/products-1 (last visited July 16, 2023).

[10] *See id.*

55.     The annotated photograph below further shows that AWM's system for organizing a plurality of electrical cables extending from a plurality of solar panels comprises a messenger wire structured to be supported a distance above the ground; a plurality of cable hangers structured to be disposed along, and suspended from, the messenger wire, each cable hanger having a plurality of cable carrying surfaces, each cable carrying surface being structured to support at least one electrical cable of the plurality of electrical cables; and wherein adjacent cable carrying surfaces of the plurality of cable carrying surfaces are separated by a cable carrier divider, as required by at least claim 1 of the '291 Patent.



56.     AWM directly infringes, literally and/or under the doctrine of equivalents, at least claim 1 of the '291 Patent in violation of 35 U.S.C. § 271(a) by making and/or having made, using, selling, and/or offering for sale in the United States, and/or importing into the United States, the accused Messenger Cable and Messenger Cable Hanger products that embody the patented invention, including at least claim 1 thereof.

**B.  AWM's Indirect Infringement of the '291 Patent**

57.    AWM also indirectly infringes at least claim 14 of the '291 Patent in violation of

35 U.S.C. § 271(b) and (c).  Claim 14 of the '291 Patent recites:

> A solar plant comprising:
>
>> a plurality of solar panels;
>> a plurality of electrical cables extending from the plurality of
>>     solar panels; and
>> a system for organizing the plurality of electrical cables, the
>>     system comprising:
>>> a messenger wire supported a distance above the ground
>>>     adjacent the solar panels; and
>>> a plurality of cable hangers disposed along, and suspended
>>>     from the messenger wire, each cable hanger having a
>>>     plurality of cable carrying surfaces, each cable carrying
>>>     surface being structured to support at least one electrical
>>>     cable of the plurality of electrical cables,
>> wherein adjacent cable carrying surfaces of the plurality of cable
>>     carrying surfaces are separated by a cable carrier divider.
> (Ex. 2).

58.    As shown in the annotated photographs above, sourced from AWM's website,

AWM's accused Messenger Cable and Messenger Cable Hanger products constitute a system for

organizing a plurality of electrical cables.  Further, AWM's system for organizing a plurality of

electrical cables comprises a messenger wire intended to be supported a distance above the

ground adjacent the solar panels; a plurality of cable hangers intended to be disposed along, and

suspended from the messenger wire, each cable hanger having a plurality of cable carrying

surfaces, each cable carrying surface being structured to support at least one electrical cable of

the plurality of electrical cables; and wherein adjacent cable carrying surfaces of the plurality of

cable carrying surfaces are separated by a cable carrier divider.

59.     AWM offers to sell and/or sells and/or imports its accused Messenger Cable and Messenger Cable Hanger products to end-user solar plants in the United States and/or to customers for installation and assembly in end-user solar plants in the United States.

60.     As shown in the annotated photograph below, sourced from AWM's 2022 Product Catalog, as constructed and operated, said end-user solar plants, in turn, directly infringe, literally and/or under the doctrine of equivalents, at least claim 14 of the '291 Patent in violation of 35 U.S.C. § 271(a) by using AWM's system for organizing a plurality of electrical cables extending from a plurality of solar panels, as claimed in at least claim 14 of the '291 Patent.



**a.   Induced Infringement of the '291 Patent**

61.     By correspondence dated August 11, 2022 (attached hereto as part of Ex. 3), CAB

notified AWM of the '291 Patent. In that letter, CAB notified AWM that, after review and

investigation of AWM's products, including comparison of AWM's products to the claims of the

patent, CAB concluded that certain of AWM's products, particularly AWM's "Messenger Cable

Hangers," infringed one or more claims of the '291 Patent.

62.     AWM has had actual notice of the '291 Patent since at least as early as August 11,

2022, and has had knowledge since at least that time that products that it makes and/or has made,

uses, offers for sale or sells in the United States, or imports into the United States, infringe the '291 Patent.

63.     AWM has sold and continues to sell its accused Messenger Cable and Messenger Cable Hanger products with the knowledge and for the intended purpose of being used in end-user solar plants. Further, through its product catalogs, marketing material, website, and product specific documentation, relating to the use and installation of its accused Messenger Cable and Messenger Cable Hanger products, AWM has encouraged, instructed, and/or aided, and continues to encourage, instruct, and/or aid said end-user solar plants in the use of AWM's Messenger Cable and Messenger Cable Hanger products.

64.     Thus, AWM has acted and continues to act with specific intent to induce at least end-user solar plants to directly infringe at least claim 14 of the '291 Patent.

65.     AWM has induced and continues to induce end-user solar plants to directly infringe at least claim 14 of the '291 Patent with actual knowledge of the '291 Patent, its scope, and products covered thereby, since before the date of commencement of this action and with the intent, or in willful blindness, that the induced acts directly infringe at least claims 14 the '291 Patent.

**b.  Contributory Infringement of the '291 Patent**

66.     As alleged in paragraphs 61 and 62, AWM has had actual knowledge of the '291 Patent since before the date of commencement of this action and continues to perform the acts alleged herein with the knowledge, or in willful blindness, that such acts contribute to the direct infringement of at least claim 14 of the '291 Patent.

67.     AWM contributes to the direct infringement of at least claim 14 of the '291 Patent, in violation of 35 U.S.C. § 271(c), by end-user solar plants of the accused Messenger

Cable and Messenger Cable Hanger products, by offering to sell and/or selling and/or importing at least one patented component, material and/or apparatus used to practice the invention—in particular AWM's accused Messenger Cable Hanger products or AWM's accused Messenger Cable Hanger products in conjunction with its accused Messenger Cable.

68.     AWM's accused Messenger Cable Hanger products or AWM's accused Messenger Cable Hanger products in conjunction with its accused Messenger Cable constitute a material part of the invention of claim 14 of the '291 Patent, and AWM knows its accused Messenger Cable Hanger products or its accused Messenger Cable Hanger products in conjunction with its accused Messenger Cable are especially made or especially adapted for use in an infringement of at least claim 14 of the '291 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**C.  Willful Infringement of the '291 Patent**

69.     As alleged in paragraphs 61 and 62, *supra*, AWM has had actual knowledge of the '291 Patent and that its acts as alleged herein constitute direct and/or indirect infringement of at least claims 1 and 14 of the '291 Patent since before the date of commencement of this action. AWM has intentionally continued to perform the acts as alleged herein with the knowledge, or in willful blindness, that such acts infringe, directly or indirectly, at least claims 1 and 14 of the '291 Patent.

70.     AWM's egregious acts of infringement of the '291 Patent as described above have been, and continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284.

71.     CAB is entitled to recover from AWM the damages sustained by it as a result of each of AWM's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

72.     AWM's continued infringement of the '291 Patent has caused and will continue to cause irreparable damage to CAB unless such unlawful actions are enjoined by this Court.

## COUNT III
## FALSE PATENT MARKING (35 U.S.C. § 292)

73.     CAB incorporates Paragraphs 1-72 by reference as if fully set forth herein.

74.     35 U.S.C. § 292(a), in relevant part, prohibits the "mark[ing] upon, or affix[ing] to, or us[ing] in advertising in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented, for the purpose of deceiving the public."

75.     Further, 35 U.S.C. § 292(b) provides that "[a] person who has suffered a competitive injury as a result of a violation of this section may file a civil action in a district court of the United States for recovery of damages adequate to compensate for the injury."

76.     On its publicly available website (shown below annotated), AWM has advertised, and continues to advertise to the public that its messenger cable hangers are a "patented product line":[11]

---

[11] *See* https://affordablewm.com/products-1 (last visited July 16, 2023).



# Messenger Cable Hangers

This patented product line is simple to install, safely supports cables while spaced up to 4.5ft, and has a life expectancy exceeding 35-years, even in the harshest environments.

77.   AWM's website does not display or identify any patent number(s) associated with its advertised and so-called "patented product line" of messenger cable hanger products.

78.   Likewise in a 2022 product catalog (shown below annotated), AWM advertises that its messenger cable hangers are a "patented product line":





79.     AWM's product catalog does not display or identify any patent number(s) associated with its advertised and so-called "patented product line" of messenger cable hanger products.

80.     The messenger cable hangers that AWM advertises as "patented" are, in fact, not covered under any issued United States or foreign patent. Thus, AWM's messenger cable hangers are unpatented articles and are falsely advertised by AWM as "patented."

81.     AWM knows that the statements on its website and in its product catalog that its messenger cable hangers are a "patented product line" is false.

82.     For example, in the footer section of AWM's website,[12] shown below, which includes its copyright notice, reservation of rights and contact information, AWM states: "Patents may be *pending* in the U.S. and elsewhere." (emphasis added).



83.     Further, in a 2020 product catalog (shown below annotated), AWM identifies a single patent application in connection with its solar cable hangers and describes it as: "Patent Pending."

---

[12] *Id.* (last visited July 16, 2023).

# Product Catalog

**Affordable Wire Management
Solar Cable Hangers and Hardware**

**October 2020**



84.    Thus, AWM is aware that it possesses, at most, only pending patent applications.

85.    Further, AWM intentionally and deliberately uses the terms, and is aware of the difference between, "patent pending" and "patented product."

86.    In addition AWM is intimately aware of the filing and prosecution of its patent applications and of the pending status of those applications.

87.     For example, as described below, presently there are a total of four AWM patent applications pending in the United States Patent and Trademark Office (USPTO), only two of which purport to relate to "Cable Hangers."

88.     On January 27, 2022, AWM filed U.S. Patent Application No. 17/597,880, entitled "Cable Hangers ("the '880 Application"). On October 4, 2022, the USPTO issued an office action rejection, in which all of the pending claims of the '880 Application were either rejected or withdrawn from consideration. On January 20, 2023, the USPTO issued a final office action rejection, in which all of the pending claims of the '880 Application again were either finally rejected or withdrawn from consideration. On May 26, 2023, the USPTO issued a further office action rejection, in which all of the pending claims of the '880 Application again were either rejected or withdrawn from consideration. To date, therefore, not only have none of the pending claims of the '880 Application been allowed by the USPTO, but all claims considered by the examiner have been rejected.

89.     On February 1, 2022, AWM filed U.S. Patent Application No. 17/590,498, entitled "Cable Hangers," as a continuation application of the '880 Application ("the '498 Application"). On January 6, 2023, the USPTO issued an office action, in which all of the pending claims of the '498 Application were either rejected or withdrawn from consideration. On July 14, 2023, the USPTO issued a final office action, in which all of the pending claims of the '498 Application again were either rejected or withdrawn from consideration. To date, therefore, not only have none of the pending claims of the '498 Application been allowed by the USPTO, but all claims considered by the examiner have been rejected.

90.     AWM has received notice of each office action rejection in both the '880 and '498 Applications relating to AWM's cable hangers.

91.     On December 27, 2022, AWM filed U.S. Patent Application No. 18/013,088, entitled "Wire Positioning Device" (the '088 Application"). On January 5, 2023, AWM filed U.S. Patent Application No. 18/150,586, entitled "Wire Positioning Device," as a continuation application of the '088 Application ("the '586 Application"). Neither of these patent applications relate to AWM's messenger cable hanger products. Further, and in any event, to date, none of the pending claims of the '088 Application or of the '586 Application has been allowed by the USPTO.

92.     AWM has received notice that none of the pending claims in the unrelated '088 and '586 Applications, relating to a wire positioning device, has been allowed.

93.     Further, presently there is a total of one pending AWM foreign patent application. On October 14, 2022, AWM filed Canadian Patent Application No. CA 3175665 in the Canadian Intellectual Property Office (CIPO), entitled "Cable Hangers" ("the '665 Application"). According to the CIPO records, the '665 Application has not yet been examined. To date, none of the pending claims of the '665 Application has been allowed by the CIPO.

94.     Accordingly, AWM knows that none of its pending U.S. or foreign patent applications has issued.

95.     Each of AWM's pending U.S. and foreign patent applications identify two named inventors: Scott Robert Rand and Daniel Robert Smith.

96.     AWM's website identifies Messrs. Rand and Smith as AWM's Co-Founders and CEO and CTO, respectively.

97.     AWM's website describes Mr. Rand as, among other things, "experienced in technology commercialization, financial management, and market-share expansion" and "focused on [AWM's] growth strategy, ensuring strong financial performance, and realizing the

company's mission to deliver value, innovation and engineering excellence to EPCs nationwide."

98.     On information and belief, therefore, Mr. Rand is responsible for, and/or has knowledge of, the contents of AWM's marketing materials, including the contents of AWM's website and product catalogs.

99.     Further on information and belief, therefore, Mr. Rand (and/or other individuals at AWM) knows that AWM's messenger cable hangers are not covered under any U.S. or foreign patent and also knows that the "patented product line" statements in AWM's website and product catalog are false.

100.    AWM falsely advertises that its messenger cable hangers are a "patented product line" as a marketing strategy to provide AWM an unfair advantage over its competitors.

101.    Through its false marking scheme, AWM deceives the public by cultivating a false reputation in the marketplace as a technology innovator and by promoting a false narrative that its messenger cable hanger products are patented.

102.    CAB and AWM are direct competitors in the marketplace for above ground cable management systems in the solar energy industry.

103.    CAB sells its own patented hanger products to the solar energy industry. CAB's solar energy industry hanger products are covered by at least the '291 Patent and compete directly with AWM's unpatented messenger cable hanger products.

104.    In addition to its infringement of CAB's patents as alleged above, AWM's false marking practices have improperly upset the competitive relationship between CAB and AWM.

105.    For example, CAB has lost, and continues to lose sales to AWM in competitive

bids for solar energy industry installation projects in which CAB and AWM have been the sole

bidders.

106.    AWM's false marking scheme has allowed, and continues to allow, AWM to

unfairly compete against CAB in the marketplace.

107.    AWM's false marking scheme has caused CAB to suffer substantial and

irreparable harm including, without limitation, lost sales, loss of market share, loss of business

opportunities, and loss of goodwill in an amount to be determined at trial.

108.    Through its marketing strategies and false representations to the public, including

to existing and potential customers of CAB's patented hanger products, AWM has deceived and

misled the public to believe that AWM's messenger cable hanger products are patented, thus

causing harm to CAB by, without limitation, direct diversion of potential CAB sales to AWM

and by a lessening of goodwill associated with CAB's patented products, in an amount to be

determined at trial.

**COUNT IV**
**FALSE ADVERTISING UNDER THE LANHAM ACT (15 U.S.C. § 1051 et seq.)**

109.    CAB incorporates Paragraphs 1-108 by reference as if fully set forth herein.

110.    The Lanham Act, 15 U.S.C. § 1125(a), provides in relevant part:

> (a)(1) Any person who, on or in connection with any goods or
> services . . . uses in commerce any word, term, name, symbol,
> or device, or any combination thereof, or any . . . false or
> misleading description of fact, or false or misleading
> representation of fact, which –
>
> * * *
>
> (B) in commercial advertising or promotion, misrepresents the
> nature, characteristics, qualities, or geographic origin of his or
> her . . . goods, services, or commercial activities,

> shall be liable in a civil action by any person who believes that
> he or she is or is likely to be damaged by such act.

111.    As described above in connection with CAB's False Patent Marking claim, AWM has made and is continuing to make literally false and intentionally misleading descriptions of fact and false and misleading representations of fact about its messenger cable hanger products.

112.    AWM's statements on its publicly available website and in its product catalog, shown above, which identify its messenger cable hangers as a "patented product line" are literally false and intentionally misleading.

113.    AWM falsely advertises and falsely represents that its messenger cable hangers are a "patented product line" as a marketing strategy to provide AWM an unfair advantage over CAB.

114.    Through its literally false advertising and false representations of fact, AWM cultivates a false reputation in the marketplace as a technology innovator and promotes a false narrative that its messenger cable hanger products are in fact patented.

115.    CAB and AWM are direct competitors in the marketplace for above ground cable management systems in the solar energy industry.

116.    CAB sells its own patented hanger products to the solar energy industry. CAB's solar energy industry hanger products are covered by at least the '291 Patent and compete directly with AWM's unpatented messenger cable hanger products.

117.    AWM's literally false "patented product line" statements about its messenger cable hanger products deceive and/or have the tendency to deceive and mislead a substantial portion of the audience to which such statements are intended, that is, purchasers and potential purchasers of AWM's and CAB's respective hanger products.

118.    AWM's literally false "patented product line" statements and deception are material because they likely influence customers' purchasing decisions.

119.    In addition to its infringement of CAB's patents and false patent marking as alleged above, AWM's literally false advertising and false representations of fact practices have improperly upset the competitive relationship between CAB and AWM.

120.    For example, CAB has lost, and continues to lose sales to AWM in competitive bids for solar energy industry installation projects in which CAB and AWM have been the sole bidders.

121.    AWM's literally false advertising and false representations of fact scheme has allowed, and continues to allow, AWM to unfairly compete against CAB in the marketplace.

122.    AWM caused its literally false "patented product line" statements to enter interstate commerce.

123.    AWM's literally false "patented product line" statements constitute false advertising and false representation of fact in violation of the Lanham Act, 15 U.S.C. § 1125(a).

124.    As a result of AWM's literally false advertising and representations of fact, CAB has been, and is likely to be, substantially and irreparably injured in, but not limited to, the loss of sales, loss of market share, loss of business opportunities, and loss of goodwill.

125.    Through its literally false advertising and false representations of fact, AWM has deceived and misled a substantial portion of AWM's intended audience to believe that AWM's messenger cable hanger products are patented, thus causing and/or likely causing injury to CAB by, without limitation, direct diversion of potential CAB sales to AWM and by a lessening of goodwill associated with CAB's patented products, in an amount to be determined at trial.

126.    AWM's deliberate, intentional, willful and/or bad faith conduct, entitles CAB to recover, without limitation, AWM's profits, the damages sustained by CAB, trebles damages, and CAB's reasonable attorney's fees and costs.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), CAB hereby requests a trial by jury on all issues so triable by right.

## DEMAND FOR RELIEF

WHEREFORE, CAB requests that the Court find in its favor and against AWM and that the Court grant the following relief:

A.  Judgment that AWM has infringed, directly and/or indirectly, the '551 Patent, literally and/or under the doctrine of equivalents;

B.  Judgment that AWM has infringed, directly and/or indirectly, the '291 Patent, literally and/or under the doctrine of equivalents;

C.  A permanent injunction enjoining AWM and its respective officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, OEM customers, and all others acting in active concert therewith from infringing, directly and/or indirectly, the '551 Patent;

D.  A permanent injunction enjoining AWM and its respective officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, OEM customers, and all others acting in active concert therewith from infringing, directly and/or indirectly, the '291 Patent;

E.  Judgment against AWM under 35 U.S.C. § 284 awarding CAB damages in an amount adequate to compensate for AWM's infringement, but no less than a reasonable

royalty for the commercialization and use made by AWM of the invention set forth in the '551 Patent, together with an award of interest and costs;

F. Judgment against AWM under 35 U.S.C. § 284 awarding CAB damages in an amount adequate to compensate for AWM's infringement, but no less than a reasonable royalty for the commercialization and use made by AWM of the invention set forth in the '291 Patent, together with an award of interest and costs;

G. That the damages found or assessed for AWM's infringement of the '551 Patent and/or the '291 Patent be increased under 35 U.S.C. § 284 to three times the amount found or assessed;

H. Granting CAB pre-judgment and post-judgment interest on the damages caused by AWM's infringing activities and other conduct complained of herein;

I. Declaring that AWM has engaged in false patent marking in connection with the advertising of its messenger cable hanger products in violation of 35 U.S.C. § 292;

J. Restraining and enjoining AWM and its respective officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, OEM customers, and all others acting in active concert therewith, from further acts of false patent marking;

K. Awarding CAB monetary damages to fully compensate it for the injuries it has sustained as a result of AWM's false patent marking;

L. Declaring CAB as the prevailing party and that this case is "exceptional," and awarding CAB its reasonable attorney's fees and costs in accordance with 35 U.S.C. § 285;

M.  Declaring that AWM has engaged in false advertising and false representations of fact in connection with the advertising of its messenger cable hanger products in violation of the Lanham Act, 15 U.S.C. § 1125(a);

N.  Restraining and enjoining AWM and its respective officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, OEM customers, and all others acting in active concert therewith, from further acts of false advertising and false representations fact;

O.  Awarding CAB a recovery of AWM's profits, the damages sustained by CAB, and the costs of bringing this action, as a result of AWM's deliberate, intentional and willful false advertising and false representations of fact;

P.  That the recovery assessed for AWM's false advertising and false representations of fact be increased under 15 U.S.C. § 1117 up to three times the amount assessed;

Q.  Declaring this case exceptional under 15 U.S.C. § 1117 and awarding CAB its reasonable attorney's fees; and

R.  That CAB be granted such other and further relief in law and equity as the Court may deem just and proper under the circumstances.

| | |
|---|---|
| Dated: July 17, 2023 | BAYARD, P.A. |
| OF COUNSEL<br>Edward C. Flynn<br>ECKERT SEAMANS CHERIN &<br>MELLOTT, LLC<br>600 Grant St., 44th Floor<br>Pittsburgh, PA 15219<br>(412) 566-6000<br>EFlynn@eckertseamans.com<br><br>Daniel Melman<br>ECKERT SEAMANS CHERIN &<br>MELLOTT, LLC<br>10 Bank St. Suite 700<br>White Plains, NY 10606<br>(914) 949-2909<br>DMelman@eckertseamans.com<br><br>Theodore Y. McDonough<br>ECKERT SEAMANS CHERIN &<br>MELLOTT, LLC<br>2000 Lenox Dr.<br>Lawrenceville, NJ 08648<br>(609) 392-2100<br>TMcDonough@eckertseamans.com | */s/ Ronald P. Golden III*<br>Stephen B. Brauerman (#4952)<br>Ronald P. Golden III (#6254)<br>600 N. King Street, Suite 400<br>Wilmington, DE 19801<br>Telephone: (302) 655-5000<br>sbrauerman@bayardlaw.com<br>rgolden@bayardlaw.com<br><br>*Attorneys for Plaintiff*<br>*Cambria County Association for the Blind and*<br>*Handicapped* |