**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CAMBRIA COUNTY ASSOCIATION FOR THE BLIND AND HANDICAPPED, INC. ) ) )  Plaintiff, ) ) v. ) ) AFFORDABLE WIRE MANAGEMENT, LLC, ) ) Defendant. ) ) ) | Civil Action No. 1:23-cv-00080-SRF |

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

I.   STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS ........................... 1

II.  SUMMARY OF ARGUMENT ................................................................................... 1

III. STATEMENT OF FACTS ........................................................................................ 2

The '551 Patent ......................................................................................................... 3

The '291 Patent ......................................................................................................... 3

False Marking and False Advertising ....................................................................... 5

IV.  ARGUMENT ......................................................................................................... 7

A. LEGAL STANDARD ............................................................................................. 7

B. CAB'S FAC ADEQUATELY ALLEGES AWM'S PRE-SUIT KNOWLEDGE TO
SUPPORT CLAIMS OF WILLFUL AND INDIRECT INFRINGEMENT ........................ 7

1. CAB's August 11, 2022 Letter to AWM Provided Adequate Pre-Suit Knowledge to
Support a Claim of Willful Infringement ................................................................. 8

2. The FAC Sufficiently Alleges AWM's Pre-Suit Knowledge to Support Claims of
Indirect Infringemen ............................................................................................. 11

C. THE FAC ADEQUATELY ALLEGES THAT THE ACCUSED PRODUCTS HAVE
NO SUBSTANTIAL NONINFRINGING USE ..................................................... 13

D. CAB PLAUSIBLY ALLEGES THAT IT SUSTAINED COMPETITIVE,
ECONOMIC AND REPUTATIONAL INJURY AS A RESULT OF AWM'S FALSE
MARKING/FALSE ADVERTISING ................................................................... 15

V.  CONCLUSION ...................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Fluid Sys., Inc. v. Huber*,
   28 F. Supp. 3d 306 (M.D. Pa. 2014) ...................................................................................19

*AgroFresh v. Essentiv LLC*,
   No. 16-662 (MN), 2019 U.S. Dist. LEXIS 13832 (D. Del. Jan. 29, 2019) ............................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................6, 16

*Bausch & Lomb Inc. v. SBH Hldgs. LLC*,
   No. 20-1463-LPS, 2022 U.S. Dist. LEXIS 51969 (D. Del. Mar. 23, 2022).........................10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................................6

*Bench Walk Lighting LLC v. LG Innotek Co.*,
   530 F. Supp. 3d 468 (D. Del. 2021)..........................................................................9

*Bench Walk Lighting LLC v. LG Innotek Co.*,
   No. 20-cv-51, ECF No. 25-1.....................................................................................9

*In re Bill of Lading*,
   2015 WL 4477699 (D. Del. July 22, 2015) .............................................................13

*Cot'n Wash, Inc. v. Henkel Corp.*,
   56 F. Supp. 3d 613 (D. Del. 2014).....................................................................16, 17

*Courtesy Prods., L.L.C. v. Hamilton Beach Brands, Inc.*,
   No. 13-2012-SLR-SRF, 2015 U.S. Dist. LEXIS 142257 (D. Del. Oct. 20,
   2015) ...................................................................................................................6, 7

*Deere & Co. v. AGCO Corp.*,
   No. 18-827-CFC, 2019 U.S. Dist. LEXIS 25885 (D. Del. Feb. 19, 2019) .............................9

*DMF, Inc. v. AMP Plus, Inc.*,
   No. 2:18-cv-07090-CAS (GJS), 2023 U.S. Dist. LEXIS 141372 (C.D. Cal.
   Aug. 11, 2023) .....................................................................................................8

*Dodots Licensing Solutions, LLC v. Lenovo Holding Co.*,
   No. 18-098 (MN), 2018 U.S. Dist. LEXIS 213202 (D. Del. Dec. 19, 2018) ........................12

*Dynamic Data Techs., LLC v. Brightcove Inc.*,
   No. 19-1190-CFC, 2020 U.S. Dist. LEXIS (D. Del. Jul. 21, 2020) .......................................12

*Dynamic Data Techs. v. Google LLC*,
   No. 19-1529-CFC, 2020 U.S. Dist. LEXIS 46285 (D. Del. Mar. 18, 2020) ...........................9

*Enzo Life Scis., Inc. v. Digene Corp.*,
   295 F. Supp. 2d 424 (D. Del. 2003).........................................................................................16

*Express Mobile, Inc. v. Squarespace, Inc.*,
   2021 U.S. Dist. LEXIS 161259 (D. Del. Aug. 25, 2021) .......................................................13

*Hall v. Bed Bath & Beyond, Inc.*,
   705 F.3d 1357 (Fed. Cir. 2013)................................................................................................14

*Hsm Portfolio LLC v. Fujitsu Ltd.*,
   No. 11-770-RGA, 2014 U.S. Dist. LEXIS 125500 (D. Del. Sept. 9, 2014) ...........................13

*Hsm Portfolio LLC v. Fujitsu Ltd.*,
   No. 11-770-RGA, 2014 U.S. Dist. LEXIS (D. Del. Sept. 9, 2014)........................................11

*Jackson v. Seaspine Holdings Corp.*,
   No. 20-1784-RGA, 2022 WL 610703 (D. Del. Feb. 14, 2022) ................................7, 8, 11, 13

*Kyowa Hakka Bio, Co. v. Ajinomoto Co.*,
   No. CV 17-313, 2018 WL 834583 (D. Del. Feb. 12, 2018) ...................................................10

*Lifetime Industries, Inc. v. Trim-Lok, Inc.*,
   869 F.3d 1372 (Fed. Cir. 2017)................................................................................................12

*Liqwd, Inc. v. L'Oréal United States*,
   No. CV 17-14-JFB-SRF, 2019 U.S. Dist. LEXIS 233247 (D. Del. June 25,
   2019) ........................................................................................................................................14

*Liqwd, Inc. v. L'Oreal USA, Inc.*,
   No. CV 17-14-JFB-SRF, 2019 U.S. Dist. LEXIS 233336 (D. Del. Apr. 30,
   2019) ................................................................................................................................ *passim*

*Merck Sharp & Dohme Corp. v. Teva Pharms. USA, Inc.*,
   2015 WL 4036951 (D. Del. July 1, 2015) ..........................................................................12, 13

*Nalco Co. v. Chem-Mod, LLC*,
   883 F.3d 1337 (Fed. Cir. 2018)................................................................................................11

*Nespresso USA, Inc. v. Ethical Coffee Co. SA*,
  No. CV 16-194-GMS, 2017 U.S. Dist. LEXIS 109460 (D. Del. July 14, 2017)....................18

*Netgear, Inc. v. Ruckus Wireless, Inc.*,
  852 F. Supp. 2d 470 (D. Del. 2012)......................................................................................10

*Norix Grp., Inc. v. Corr. Techs., Inc.*,
  No. 17-cv-07914, 2018 U.S. Dist. LEXIS 131435 (N.D. Ill. Aug. 6, 2018) ..........................18

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*
  653 F.3d 241 (3d Cir. 2011).................................................................................................14

*Pocket Plus, L.L.C. v. Runners High*,
  LLC, No. 21-cv-4-CJW, 2021 U.S. Dist. LEXIS 252962 (N.D. Iowa July 26,
  2021) ....................................................................................................................................18

*Reybold Grp. of Cos. v. Doe*,
  323 F.R.D. 205 (D. Del. 2017) .............................................................................................17

*Rogers v. Conair Corp*,
  No. 10-1497, 2012 U.S. Dist. LEXIS 58110 (E.D. Pa. Apr. 25, 2012) ..................................18

*Sentry Prot. Prods., Inc. v. Eagle Mfg. Co.*,
  400 F.3d 910 (Fed. Cir. 2005)................................................................................................7

*St. Clair Intellectual Prop. Consultants, Inc. v. Hewlett-Packard Co.*,
  No. 10-425-LPS, 2012 U.S. Dist. LEXIS 42749 (D. Del. Mar. 28, 2012) ..............................7

*Sukumar v. Nautilus, Inc.*,
  785 F.3d 1396 (Fed. Cir. 2015).............................................................................................14

*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
  528 F. Supp. 3d 247 (D. Del. 2021).......................................................................................11

**Statutes**

35 U.S.C. § 271(b) ...................................................................................................................10

35 U.S.C. § 284.........................................................................................................................4

35 U.S.C. § 292.........................................................................................................................0

35 U.S.C. § 292(b) ..................................................................................................................14

Lanham Act, 15 U.S.C. § 1125(a) .............................................................................0, 2, 14, 16

**Other Authorities**

FED. R. CIV. P. 8(a)(2)...........................................................................................................6, 18

Fed. R. Civ. P. 12(b)(6)...................................................................................................0, 6, 16, 19

Fed. R. Civ. P. 15(a)(1).............................................................................................................0

Fed. R. Civ. P. 15(a)(2)...........................................................................................................19

Plaintiff Cambria County Association for the Blind and Handicapped, Inc. ("CAB") respectfully submits this brief in opposition to Defendant Affordable Wire Management LLC's ("AWM") Motion to Dismiss CAB's First FAC ("FAC").

## I.      STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

CAB commenced this proceeding on January 23, 2023 by filing a complaint alleging that AWM directly, indirectly and willfully infringes CAB's U.S. Patents Nos. 10,177,551 (the " '551 Patent") and 11,349,291 (the " '291 Patent") (collectively the "Asserted Patents"). D.I. 1. On June 23, 2023, pursuant to Fed. R. Civ. P. 12(b)(6), AWM moved to dismiss the claims for indirect and willful infringement. D.I. 15. CAB then filed an FAC pursuant to Fed. R. Civ. P. 15(a)(1) on July 17, 2023, in which CAB reasserted its claims for direct and indirect infringement and added new claims for false marking under 35 U.S.C. § 292 and false advertising under the Lanham Act, 15 U.S.C. § 1125(a). D.I. 18. AWM filed the instant motion to dismiss on August 14, 2013, again seeking dismissal of CAB's claims for indirect and willful infringement, as well as dismissal of the false marking and Lanham Act false advertising claims. D.I. 19.

## II.      SUMMARY OF ARGUMENT

1.  The FAC alleges that CAB provided written pre-suit notice to AWM of the '551 and '291 Patents, and of AWM's infringement of those patents. This notice, appended to the FAC, identifies the specific patents, and the specific AWM products that infringe those patents. As such, the FAC plausibly pleads facts showing AWM's pre-suit knowledge of infringement necessary to support claims of induced infringement, contributory infringement, and enhanced

damages as a result of willful infringement. AWM would impose more stringent pleading standards on CAB than what is required by law.

2. The FAC adequately pleads that AWM's component products are not staple articles or commodities of commerce suitable for substantial noninfringing uses. Nothing in the FAC undermines that allegation.  This is sufficient to plead contributory infringement.

3. The FAC also adequately pleads facts to support CAB's claim of competitive and economic injury as a result of AWM's false marking and false advertising. AWM would require that CAB identify specific instances of injury, and exclude all other factors that could theoretically contribute to such injury. The law does not impose such a burden on CAB at the pleading stage of the case.

## III.   STATEMENT OF FACTS

CAB is a nonprofit corporation which, for over 80 years, has developed and supported an environment for persons with disabilities which promotes vocational and employment training, independence, and community involvement through rehabilitative, recreation and low-vision services.  CAB unites vocational training with a product manufacturing business that offers employment for persons with disabilities. D.I. 18 at ¶3.

CAB develops, manufactures, and sells, *inter alia*, electrical cable and wiring support and grounding systems and products for the solar energy industry. CAB's innovative systems and products are protected by multiple patents, including the Asserted Patents. CAB's solar cable management systems and products deliver safe, strong, and durable support for all types of wiring in utility scale, ground-mount solar power plants. CAB's patented cabling systems have gained wide industry acceptance, recognition, and praise because they meet and exceed the most

stringent quality standards, are quick and easy to install and provide significant cost savings in engineering, installation labor, materials, and long-term maintenance. *Id*. at ¶4.


The '551 Patent

The '551 Patent relates to a grounding system for a suspended electric cable assembly, that includes conductive elements whereby grounding cables do not need to be spliced into a conductor wire disposed adjacent a messenger wire, and further relates to a system wherein a multi-function line provides both support and a current path to ground. *Id*. at ¶23.  Prior to the invention of the '551 Patent, grounding conductors were grounded by splicing a conductor (e.g., copper wire) into the grounding conductor and electrically coupling the conductor to either a grounding cable or a conductive pile. *Id*. at ¶24.  The process of splicing the copper wire conductor into the grounding conductor and making an electrical coupling with the pile was difficult, time consuming and expensive. *Id*.  The '551 Patent addresses these problems by providing an electrical grounding system structured to ground a number of cables supported by a support assembly.  The grounding system includes a multi-function line assembly and a number of mounting assemblies, where each mounting assembly is structured to be coupled to the multi-function line and a conductive pile, thereby providing a path to ground without the need for grounding splices. *Id*. at ¶25.

The '291 Patent

The '291 Patent relates to systems for use in the solar industry for organizing a plurality of AC and DC electrical cables that extend from a plurality of solar panels to combiner boxes and then to power inverters.  The cable management system of the '291 Patent includes a messenger wire structured to be supported above the ground, and a plurality of cable hangers

structured to be suspended from the messenger wire, with each hanger having multiple cable carrying surfaces structured to support the electrical cables.  *Id*. at ¶¶27, 31.  In addition to providing an inventive above-ground cable management system for solar plants, the claimed invention of the '291 Patent also addresses changes that were made to the National Electric Code requiring AC and DC electrical cables to be bundled separately and not immediately adjacent to one another. D.I. 18 at ¶27-28. The '291 Patent, therefore, provides a new, safe and more efficient system for organizing electrical cables in the solar industry.  *Id*. at ¶29.

Claims for Indirect and Willful Infringement

In addition to asserting claims of direct infringement of at least claims 1 and 19 of the '291 and '551 Patents, respectively, the FAC asserts claims of induced and contributory infringement of at least claim 1 of the '551 Patent and at least claim 14 of the '291 Patent. *Id*. at ¶¶35-50, 57-72. With respect to its claims of indirect infringement of at least claim 1 of the '551 Patent, the FAC specifically alleges that:

- AWM offers to sell and/or sells its specifically identified conductive Messenger Cable and Hardware components (including a conductive mounting assembly) to its customers, who, in turn, directly infringe claim 1 by coupling these components and causing them to be in electrical communication with the conductive mounting assembly.  *Id*. at ¶37.

- AWM encourages its customers through its product catalogs, marketing material and website to use these components in a manner that directly infringes claim 1, and further provides to its customers specific documentation relating to the use and installation of those products, all with the specific intent to induce its customers to infringe and with actual knowledge of the '551 Patent and of its infringing activities. *Id*. at ¶¶38-43.

- AWM contributes to its customers' direct infringement through the sale of its Hardware and conductive Messenger Cable components, which are made or adapted for use in an infringing manner and not a staple article of commerce suitable for substantial non-infringing use.  *Id*. at ¶¶45-46.

The FAC further seeks enhanced damages under 35 U.S.C. § 284, as a result of its willful infringement, both direct and indirect, of the '551 Patent. *Id*. at ¶¶47-49.

The FAC asserts claims for induced and contributory infringement of at least claim 14 of the '291 Patent through the sale and/or offer for sale of its specifically identified Messenger Cable and Messenger Cable Hanger components to end user solar plants and/or installers, who directly infringe claim 14 when they install and assemble these components in a solar plant. *Id*. at ¶¶59-60. The FAC 1) alleges that AWM knowingly and intentionally induces, encourages, instructs and aids end user solar plants and/or installers to infringe with actual knowledge of the '291 Patent and its infringing activities; and 2) alleges that AWM contributes to its customers' direct infringement through the sale of its Messenger Cable and/or Messenger Cable Hanger components that are not suitable for substantial non-infringing use. *Id*. at ¶¶61-68. The FAC also seeks enhanced damages as a result of AWM's willful infringement, both direct and indirect, of the '291 Patent. *Id*. at ¶¶69-70.

Regarding AWM's knowledge of the Asserted Patents and of its infringing activities, the FAC alleges that CAB first provided written notice to AWM of the '551 Patent in a letter dated September 29, 2020, and in a subsequent letter dated August 11, 2022, provided additional notice of the '291 Patent. The August 11, 2022 letter further notified AWM that CAB's investigation of AWM's product offerings, website, and catalogs, and comparison of those products to the claims of the '551 and '291 Patents, led to the conclusion that AWM's Hardware products infringe the '551 Patent and that its Messenger Cable Hangers infringe the '291 Patent. *Id*. at ¶¶38-39, 61-62; D.I. 18-3.

<u>False Marking and False Advertising</u>

The FAC alleges that on its publicly available website and in its product catalog, AWM knowingly and with the intent to deceive the public falsely advertises and promotes its Messenger Cable Hangers as a "patented product line." D.I. 18 at ¶¶73-126. The FAC further alleges that AWM does so as a marketing strategy to provide AWM an unfair advantage over CAB. *Id.* at ¶¶100, 113. Specifically, AWM cultivates a false reputation in the marketplace as a technology innovator and promotes a false narrative that its messenger cable hanger products are, in fact, patented. *Id.* at ¶¶101, 114. AWM's literally false statements deceive and/or have the tendency to deceive and mislead a substantial portion of the purchasers and potential purchasers of AWM's and CAB's respective hanger products, and are material because they likely influence customers' purchasing decisions. *Id.* at ¶¶117-118.

CAB and AWM are direct competitors, and often the sole bidders, in the marketplace for above ground cable management systems in the solar energy industry. *Id.* at ¶¶102, 105, 115, 120. AWM's literally false advertising and false representations of fact have improperly upset the competitive relationship between CAB and AWM, *id.* at ¶¶104, 119, and as a result, CAB has lost, and continues to lose sales to AWM in competitive bids for solar energy industry installation projects in which CAB and AWM have been the sole bidders, *id.* at ¶¶105, 120. AWM's literally false advertising and false representations have allowed, and continue to allow, AWM to unfairly compete against CAB in the marketplace. *Id.* at ¶¶106, 121.

As a result of AWM's literally false advertising and representations of fact, CAB has been (as evidenced by the lost bids in which CAB and AWM were the sole bidders), and is likely to be, substantially and irreparably injured in, but not limited to, the loss of sales, loss of market share, loss of business opportunities, and loss of goodwill. *Id.* at ¶¶105, 107, 120, 124. Furthermore, AWM's literally false advertising and false representations of fact have deceived

and misled a substantial portion of AWM's intended audience to believe that AWM's messenger cable hanger products are patented. *Id.* at ¶¶108, 125. Thus, AWM's literally false advertising and false representations of fact have caused and/or are likely to cause injury to CAB by, without limitation, direct diversion of potential CAB sales to AWM and by a lessening of goodwill associated with CAB's patented products. *Id.*

## IV.   ARGUMENT

### A.  LEGAL STANDARD

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2); *see also Courtesy Prods., L.L.C. v. Hamilton Beach Brands, Inc.,* No. 13-2012-SLR-SRF, 2015 U.S. Dist. LEXIS 142257, at *3 (D. Del. Oct. 20, 2015). Detailed factual allegations are not required. Rather, the complaint need only set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Courtesy Prods.*, 2015 U.S. Dist. LEXIS 142257, at *3 (citing *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56).

### B.  CAB'S FAC ADEQUATELY ALLEGES AWM'S PRE-SUIT KNOWLEDGE TO SUPPORT CLAIMS OF WILLFUL AND INDIRECT INFRINGEMENT

AWM argues that CAB's claims for willful infringement, induced infringement, and contributory infringement should be dismissed because "CAB fails to sufficiently plead *knowledge of infringement*" of the Asserted Patents. D.I. 20 at 7 (emphasis in original). AWM wholly dismisses the pre-suit notice letters that CAB provided to AWM, because they did not provide AWM with an element-by-element analysis of AWM's infringement. The notice letter

dated August 11, 2022, specifically identified the two patents that were being infringed, and specifically identified the products that CAB's investigation had shown were infringing those patents.  But AWM would require that this pre-suit notice letter go further, that it explain specifically why CAB believes that AWM's products infringe, and specifically how they infringe.  *Id*. at 10. AWM would require that a pre-suit notice letter attach claim charts, mapping the accused products to the patent claims.  *Id*. at 5, 11. AWM suggests that without such detailed infringement contentions, it is incapable of deducing how these specifically identified limited number of products infringe these two specifically identified patents. The law does not require what AWM would require. Viewed in the light most favorable to CAB, the allegations of the FAC are sufficient to plead AWM's pre-suit knowledge of infringement.

### 1.  CAB's August 11, 2022 Letter to AWM Provided Adequate Pre-Suit Knowledge to Support a Claim of Willful Infringement

A claim for willful infringement will survive a motion to dismiss when the patent holder has pled that the infringer had "knowledge of the patent and of [its] infringement." *Sentry Prot. Prods., Inc. v. Eagle Mfg. Co.*, 400 F.3d 910, 918 (Fed. Cir. 2005); *see also Jackson v. Seaspine Holdings Corp.*, No. 20-1784-RGA, 2022 WL 610703, at *7 (D. Del. Feb. 14, 2022) ("To plead a claim of willful infringement, the complaint must allege that the accused infringer knew of the patent-in-suit, and knowingly or intentionally infringed the patent after acquiring that knowledge.") (citing *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378–79 (Fed. Cir. 2020)). "Actual knowledge of infringement or the infringement risk is not necessary to plead a claim for willful infringement," but a party must adequately allege "factual circumstances in which the patents-in-suit [are] called to the attention" of the [alleged infringer]." *St. Clair Intellectual Prop. Consultants, Inc. v. Hewlett-Packard Co.*, No. 10-425-LPS, 2012 U.S. Dist. LEXIS 42749, at *2-3 (D. Del. Mar. 28, 2012).

8

As set forth in the FAC, CAB's August 11, 2022 pre-suit letter was sufficient to call the '551 and '291 Patents to AWM's attention and to put AWM on notice of its infringement. That letter informed AWM that CAB had investigated certain AWM products manufactured, used, sold or offered for sale in the United States. It specifically identified the "Hardware" products and "Messenger Cable Hangers" shown on AWM's website, and included a direct link to that portion of AWM's website that included photographs depicting those products. The letter further informed AWM that CAB had compared those products to the claims of the '551 and '291 Patents, and concluded that the Messenger Cable Hangers infringed at least one claim of the '291 Patent and that the Hardware products infringed at least one claim of the '551 Patent. D.I. 18 at ¶38-39, 61-62; D.I. 18-3.

This court has found assertions such as those in CAB's August 11, 2022 letter to be sufficient to allege knowledge of infringement. For example, in *Jackson v. Seaspine Holdings Corp.*, No. 20-1784-RGA, 2022 WL 610703, at *4-5 (D. Del. Feb. 14, 2022), the plaintiff's letter "offer[ed] a license, identifi[ed] ten Asserted Patents, nam[ed] the accused Newport, Malibu, and Mariner systems, and provid[ed] notice of infringement." Those assertions, the court decided, were "sufficient to plead [pre-suit] knowledge of the ten patents and their infringement." *Id.* at *5; *see also DMF, Inc. v. AMP Plus, Inc.*, No. 2:18-cv-07090-CAS (GJS), 2023 U.S. Dist. LEXIS 141372, at *7-8 (C.D. Cal. Aug. 11, 2023) ("To serve as actual notice . . . a letter must be sufficiently specific to support an objective understanding that the recipient may be an infringer. Thus, to be sufficiently specific, the letter must communicate a charge of infringement of specific patents by a specific product or group of products.") (quoting *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1372 (Fed. Cir. 2001)) (internal quotations omitted).

CAB's notice letter is entirely distinguishable from the letter at issue in *Bench Walk Lighting LLC v. LG Innotek Co.*, 530 F. Supp. 3d 468 (D. Del. 2021), cited by AWM. There, plaintiff's unsigned notice letter, received by defendants *after* suit was filed, did not even mention two of the ten patents in suit, and did not reference most of the accused products or their product families.  *Id*. at 492.  The letter did not accuse any specific product of infringing any specific patent, and left it up to defendants to examine all of their products and compare them to unspecified patents from plaintiff's entire patent portfolio that consisted of over 90 patents from 70 separate families. Opening Brief In Support Of Defendant's Renewed Motion To Dismiss at Exhibit A, *Bench Walk Lighting LLC v. LG Innotek Co.*, No. 20-cv-51, ECF No. 25-1. It can hardly be said, as AWM tries to say, that the letter in that case is "strikingly similar" to CAB's notice letter to AWM, which links a limited number of specifically identified AWM products to two specific patents.[1]

AWM also relies on *Dynamic Data Techs. v. Google LLC*, No. 19-1529-CFC, 2020 U.S. Dist. LEXIS 46285 (D. Del. Mar. 18, 2020) and *Deere & Co. v. AGCO Corp.*, No. 18-827-CFC, 2019 U.S. Dist. LEXIS 25885, at *15-16 (D. Del. Feb. 19, 2019). *Dynamic Data* is inapposite because there was no allegation that the defendant was informed of its alleged infringement prior to suit. In *Deere & Co.*, the plaintiff's pre-suit notice letter failed to identify any allegedly infringing product and so was insufficient to inform the defendant that its "activities constituted a sufficient risk of infringement to make them cease those activities." Again, that is not the case with CAB's pre-suit notice letter.

---

[1] It should also be noted that plaintiff objected to that portion of the R&R that concluded that the notice letter did not provide sufficient pre-suit knowledge. On review, District Judge Andrews did not rule on the substance of these objections, since he agreed with the R&R that plaintiff had conceded this point, and thus rendering the objections moot.  *Bench Walk Lighting*, 530 F. Supp. 3d at 478.

AWM's argument that CAB's August 11, 2022, letter is insufficient to provide knowledge of infringement because it does not provide a detailed analysis, complete with claim charts, showing why and how AWM's product infringe, is contrary to law. *See, e.g., Bausch & Lomb Inc. v. SBH Hldgs. LLC*, No. 20-1463-LPS, 2022 U.S. Dist. LEXIS 51969, at *5 (D. Del. Mar. 23, 2022) ("[A] plaintiff is not required to 'plead facts establishing that each element of an asserted claim is met.' The level of detail required for the complaint varies 'depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device.'") (quoting *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018); *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021)). AWM does not, because it cannot, cite a single case in support of its argument. The Court should decline AWM's attempt to impose such a heavy burden before litigation even commences.

## 2. The FAC Sufficiently Alleges AWM's Pre-Suit Knowledge to Support Claims of Indirect Infringement

Courts will sustain a § 271(b) claim for *induced infringement* under the *Twombly/Iqbal* standards where the plaintiff has pled the existence of a direct infringer, the defendant's knowledge of the patent, and the defendant's specific intent to induce infringement. *Netgear, Inc. v. Ruckus Wireless, Inc.*, 852 F. Supp. 2d 470, 475–76 (D. Del. 2012) (plaintiff sufficiently pled or otherwise plausibly inferred a direct infringer, defendant's knowledge of the patent-in-suit, and defendant's specific intent to induce the infringement "by its activities relating to the marketing and distribution" of its products); *see also Kyowa Hakka Bio, Co. v. Ajinomoto Co.*, No. CV 17-313, 2018 WL 834583, at *10 (D. Del. Feb. 12, 2018). "To state a claim for *contributory infringement*, a complaint must plead facts plausibly showing that (1) 'there is direct infringement,' (2) 'the accused infringer had knowledge of the patent,' (3) 'the component

11

has no substantial noninfringing uses,' and (4) 'the component is a material part of the invention.' *Jackson v. Seaspine Holdings Corp.*, No. 20-1784-RGA, 2022 WL 610703, at *7 (D. Del. Feb. 14, 2022) (quoting *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

With respect to the knowledge element for both induced and contributory infringement, AWM only asserts that the notice letter fails to sufficiently plead knowledge of infringement. For the same reasons as discussed above, the pre-suit notice letter provided by CAB to AWM further provides AWM's knowledge of its own direct infringement of at least claim 1 of the '291 Patent and claim 19 of the '551 Patent. Moreover, with respect to indirect infringement of at least claim 14 of the '291 Patent and claim 1 of the '551 Patent, the FAC adequately pleads AWM's requisite knowledge that actions of third-party customers would constitute infringing activities when combining or assembling the component parts provided by AWM. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018) (finding that plaintiff's complaint adequately alleged the defendant's knowledge that customers' actions would constitute infringement where it "provid[ed] instructions, support, and technical assistance for the use of the" infringing system). *See also Hsm Portfolio LLC v. Fujitsu Ltd.*, No. 11-770-RGA, 2014 U.S. Dist. LEXIS , at *9 (D. Del. Sept. 9, 2014) (denying motion to dismiss induced infringement claim where complaint alleged defendant's specific intent in the form of "creating advertisements, creating established distribution channels, manufacturing the products in accordance with U.S. law, distributing manuals, and providing technical support all evidence specific intent."). This is precisely what the FAC alleges.  D.I. 18 at ¶¶40-41, 63.

AWM appears to argue that for indirect infringement, pre-suit notice must have been given to AWM not only of its own infringement, but of third parties' infringement. D.I. 20 at 8, 11. The cases cited by AWM do not support its novel argument. One of those cases, *ZapFraud,*

*Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 249 (D. Del. 2021), only decided that an operative complaint fails to state a claim for indirect infringement where the requisite knowledge of the asserted patents is based on a prior version of that complaint. The same is true of *Dodots Licensing Solutions, LLC v. Lenovo Holding Co.*, No. 18-098 (MN), 2018 U.S. Dist. LEXIS 213202, at *12 (D. Del. Dec. 19, 2018) (operative complaint failed to allege knowledge of infringement of any of the Patents-in-Suit prior to filing the original complaint). The case of *Dynamic Data Techs., LLC v. Brightcove Inc.*, No. 19-1190-CFC, 2020 U.S. Dist. LEXIS, at *6 (D. Del. Jul. 21, 2020) is no more helpful. The court in that case again found that the complaint itself cannot serve as a basis for the defendant's knowledge, and that where the complaint does nothing more that provide a formulaic recitation of the elements of a claim for induced infringement, it is insufficient. And finally, the *Lifetime Industries, Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1380 (Fed. Cir. 2017) case cited by AWM actually supports CAB. In that case, it was alleged that the defendant had knowledge of the asserted patent and the products covered thereby, and thereafter assisted in or directed the installation of the same type of products as covered by the patent. The Federal Circuit found that its precedent requires no more.  Again, these are exactly the kinds of allegations set forth in the FAC.  D.I. 18 at ¶¶38-41, 61-63.

## C.  THE FAC ADEQUATELY ALLEGES THAT THE ACCUSED PRODUCTS HAVE NO SUBSTANTIAL NONINFRINGING USE

AWM argues that the FAC fails to provide plausible factual allegations that the accused products are not a staple article of commerce and not suitable for substantial noninfringing use. D.I. 20 at 13. But as recognized by this court, "[t]he Federal Circuit has ruled that affirmatively pleading the absence of substantial non-infringing uses renders the claim plausible if the pleadings do not undermine that allegation." *Merck Sharp & Dohme Corp. v. Teva Pharms. USA, Inc.*, 2015 WL 4036951, at *7 (D. Del. July 1, 2015) (citing *In re Bill of Lading*, 681 F.3d

1323, 1339 (Fed. Cir. 2012)), report and recommendation adopted, 2015 WL 4477699 (D. Del. July 22, 2015). This court has applied *Merck* to conclude that allegations such as those of CAB's FAC are sufficient to plead the absence of a substantial noninfringing use. *See, e.g.*, *Jackson v. Seaspine Holdings Corp.*, No. 20-1784-RGA, 2022 WL 610703, at *7 (D. Del. Feb. 14, 2022) (finding that allegations that the material components designed, configured and adapted to work with each other and have no substantial purpose other than as part of infringing devices are sufficient). *See also Express Mobile, Inc. v. Squarespace, Inc.*, 2021 U.S. Dist. LEXIS 161259 at *12 (D. Del. Aug. 25, 2021) (complaint alleging that accused products are made for use in an infringement and are not staple articles of commerce suitable for substantial non-infringing use renders the claim plausible). These are precisely the kinds of allegations of contributory infringement set forth in the FAC. D.I. at ¶¶46, 68.

Moreover, AWM misstates what the FAC identifies as the components underlying its contributory infringement claims. *See D*.I. 20 at 15. With respect to the '291 Patent, the claim for contributory infringement is not based on AWM's sales of the messenger wire *alone*. Rather, the claim is based on AWM's sales of the accused Messenger Cable Hangers *alone or together with* the messenger cable. D.I. 18 at ¶68. With respect to the '551 Patent, CAB's contributory infringement claim is based on AWM's sales of conductive mounting assemblies *and/or conductive* messenger wire (i.e., multi-function line that both provides support and is conductive). The claim is not based on AWM's sales of only non-conductive messenger wire as AWM asserts. D.I. 18 at ¶45-46.[2]

---

[2] *AgroFresh v. Essentiv LLC*, No. 16-662 (MN), 2019 U.S. Dist. LEXIS 13832, at *14 (D. Del. Jan. 29, 2019), does not support AWM's position. There, the complaint did not plausibly plead noninfringing use where it failed even to identify a product, and said nothing more than defendants sell *something* that infringes and has no noninfringing use. In *Hsm Portfolio LLC v. Fujitsu Ltd.*, No. 11-770-RGA, 2014 U.S. Dist. LEXIS 125500 (D. Del. Sept. 9, 2014), the court

### D. CAB PLAUSIBLY ALLEGES THAT IT SUSTAINED COMPETITIVE, ECONOMIC AND REPUTATIONAL INJURY AS A RESULT OF AWM'S FALSE MARKING/FALSE ADVERTISING

AWM's motion to dismiss CAB's false marking and false advertising claims is limited solely to challenging the sufficiency of the FAC's allegations in support of a causal connection between AWM's false marking and false advertising and CAB's competitive, economic and reputational injuries.

To establish a claim for false marking, a plaintiff must demonstrate, *inter alia*, that "it suffered a competitive injury as a result of [AWM's] false marking." *See Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1373 (Fed. Cir. 2013); *see also* 35 U.S.C. § 292(b). A "competitive injury" is defined as "[a] wrongful economic loss caused by a commercial rival, such as the loss of sales due to unfair competition; a disadvantage in a plaintiff's ability to compete with a defendant, caused by the defendant's unfair competition." *Sukumar v. Nautilus, Inc.*, 785 F.3d 1396, 1400 (Fed. Cir. 2015), citing Black's Law Dictionary (9th ed. 2009). The law does not, however, require that a plaintiff plead specific instances of competitive injury to sustain a false marking claim. *Liqwd, Inc. v. L'Oreal USA, Inc.*, No. CV 17-14-JFB-SRF, 2019 U.S. Dist. LEXIS 233336, at *48 (D. Del. Apr. 30, 2019).[3]

"To establish a false advertising claim under the Lanham Act, a plaintiff must prove . . . [inter alia], that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.* 653 F.3d 241, 248 (3d Cir.

---

dismissed a contributory infringement claim where the accused product was not a "component" of an infringing product because the component itself was accused of direct infringement.

[3] The objections of both parties to the R&R were overruled and the R&R "denied as moot" when the District Judge resolved all issues on subsequently filed motions for summary judgment. *Liqwd, Inc. v. L'Oréal United States*, No. CV 17-14-JFB-SRF, 2019 U.S. Dist. LEXIS 233247 (D. Del. June 25, 2019).

2011). As with its false marking claims, CAB is not required to allege in detail how its goodwill

was damaged or how it suffered lost sales. *Liqwd, Inc.*, 2019 U.S. Dist. LEXIS 233336, at *48.

AWM's arguments ignore key factual allegations and rely on heightened pleading

standards unsupported by law. Following CAB's detailed (and unchallenged) allegations that

AWM falsely marks and falsely advertises unpatented articles and intentionally deceives and

misleads the public (D.I. 18 at ¶¶76-99, 111-112), CAB alleges that AWM's false marking/false

advertising is "a marketing strategy" aimed towards "provid[ing] AWM an unfair advantage over

its competitors," and that "[t]hrough its false marking scheme [and literally false advertising],

AWM deceives the public by cultivating a false reputation in the marketplace as a technology

innovator and by promoting a false narrative that its messenger cable hanger products are

patented." (*Id.* at ¶¶100-101, 108; 113-114, 125.)

Further, CAB's patented hanger products "compete directly with AWM's unpatented

messenger cable hanger products." (*Id.* at ¶¶102-103, 115-116.) AWM's false marking [and false

advertising] practices have improperly upset the competitive relationship between CAB and

AWM," and "CAB has lost, and continues to lose sales to AWM in competitive bids for solar

energy industry installation projects ***in which CAB and AWM have been the sole bidders***." (*Id.*

at ¶¶104-105, 119-120 (emphasis added).)

From CAB's contentions that it "develops, manufactures, and sells ***innovative*** electrical

cable and wiring support and grounding systems and products in the solar energy industry," and

that its "***patented*** cabling systems have gained ***wide industry acceptance, recognition and praise***

. . . " (D.I. at¶ 4 (emphasis added)), the Court can reasonably infer that CAB relies on this

goodwill to distinguish itself from competitors who lack such innovation and industry

recognition. Indeed, the Court can reasonably infer that CAB's patented products provide a

competitive advantage over competitor products, like AWM's products, that are unpatented. CAB's goodwill, and its ability to differentiate itself from the competition, is impaired as a result of AWM's false marking and advertising. *See Iqbal*, 556 U.S. at 679 (a court may "draw on its judicial experience and common sense" when assessing the sufficiency of a pleadings under Rule 12(b)(6)). From these facts, the Court can also reasonably infer that AWM's scheme results in CAB suffering competitive and economic injuries including lost sales, lost market share, and lost business opportunities, as well as the lessening of the goodwill associated with CAB's competing patented products. (D.I. 18 at ¶¶107-108, 124-125.)

Indeed, this Court has specifically found such allegations to be sufficient to plead a competitive injury in *Liqwd, Inc.*, 2019 U.S. Dist. LEXIS 233336, at *48. In that case, the counterclaim alleged that L'Oreal manufactures and sells products that compete with Olaplex's products, and that Olaplex's false marking scheme gave it an unfair advantage over L'Oreal in a two-player market, "resulting in L'Oreal's loss of sales, market share, business opportunities, and goodwill." *Id*. This Court found that the counterclaim adequately identified a competitive injury, stating that "[t]hese allegations are sufficient to plead '[a] wrongful economic loss caused by a commercial rival, such as the loss of sales due to unfair competition; a disadvantage in a plaintiff's ability to compete with a defendant, caused by the defendant's unfair competition.'" *Id*. at *48-*49, c*iting Sukumar,* 785 F.3d at 1400. *See also Enzo Life Scis., Inc. v. Digene Corp.*, 295 F. Supp. 2d 424, 428 (D. Del. 2003) ("Finally, Digene claims a likelihood of injury from Biochem's conduct, including 'damage to its business, reputation and good will', and therefore, the Court finds that Digene has sufficiently pled the final element of a Lanham Act claim.").

AWM's cited cases are readily distinguishable. CAB'S FAC goes well beyond the bare bones allegations in *Cot'n Wash, Inc. v. Henkel Corp*., 56 F. Supp. 3d 613 (D. Del. 2014), where

the proposed counterclaim asserted, without more, that defendants "have suffered competitive injury because they compete with plaintiffs in the laundry products market and plaintiffs' false marking has caused defendants to suffer 'lost sales, loss of market share, loss of business opportunities, [and] loss of good will." *Cot'n Wash, Inc.*, 56 F. Supp. 3d at 624. In stark contrast, CAB alleges, inter alia, that AWM "cultivat[es] a false reputation in the marketplace as a technology innovator and . . . promot[es] a false narrative that its messenger cable hanger products are patented" (just like CAB's products); "CAB sells its own patented hanger products . . . [that] compete directly with AWM's unpatented . . . products"; "AWM's false marking practices have improperly upset the competitive relationship between CAB and AWM" (depriving CAB of the advantage of being able to offer its patented products over AWM's unpatented products); and "CAB has lost, and continues to lose sales to AWM in competitive bids for solar energy industry installation projects in which ***CAB and AWM have been the sole bidders***."  (D.I. 18 at ¶¶101-105) (emphasis added). CAB's allegations go even further than the allegations this Court found to be sufficient in *Liqwd, Inc.*

Inconsistently, AWM accuses CAB of "mak[ing] vague and conclusory allegations that it has suffered ***unspecified*** competitive disadvantages . . . and that it has suffered ***unspecified*** loss of sales, goodwill, and market share." D.I. 20 at 18 (emphasis added). In the next breath, however, AWM quotes *Cot'n Wash, Inc.*, 56 F. Supp. 3d at 624-25, for the legal proposition that "specific instances of competitive injury ***do not need to be pled*** to state a claim for false marking . . ." *Id*. (emphasis added). AWM attempts once more to impose a heightened pleading standard on CAB unsupported – and expressly contradicted – by controlling legal authority.

In the false advertising context, AWM cites *Reybold Grp. of Cos. v. Doe*, 323 F.R.D. 205, 209-10 (D. Del. 2017) to support its argument.  As quoted by AWM, however, a "[p]laintiff must

sufficiently allege. . . . that there is a ***likelihood of injury*** to the plaintiff in terms of declining

sales, loss of good will, etc." D.I. at 17, quoting *Reybold,* 323 F.R.D. at 209-210 (emphasis

added). CAB's FAC at the very least alleges that there is a likelihood of injury to CAB in terms

of declining sales, loss of market share, and loss of goodwill due to AWM's false advertising.

(D.I. 18 at¶¶ 117-118 (AWM's literally false statements about its unpatented products

"deceive[s] and/or [has] the tendency to deceive and mislead . . . purchasers and potential

purchasers of AWM's and CAB's respective hanger products" and "likely influence[s]

customers' purchasing decisions").)

AWM also relies on *Nespresso USA, Inc. v. Ethical Coffee Co. SA*, No. CV 16-194-GMS,

2017 U.S. Dist. LEXIS 109460, at *12 (D. Del. July 14, 2017). In that case, however, the alleged

inability to enter the U.S. market was "negatively impacted by Nespresso's allegedly predatory

redesign, ***not*** its false or misleading advertising." *Id*. (emphasis added). CAB's FAC, in contrast,

explicitly alleges that CAB's injuries were directly caused by AWM's false marking and false

advertising.[4]

Lastly, AWM again attempts to impose on CAB a greater pleading standard than is

required under Fed. R. Civ. P. 8(a)(2) and *Iqbal/Twombly*, by seemingly requiring CAB to plead

facts that would exclude a myriad of other speculative factors that may have contributed to its

---

[4]     AWM relegates additional cases from other jurisdictions to a footnote. D.I. 20 at 19, n.1.
These cases only highlight the sufficiency of CAB's pleading: *Rogers v. Conair Corp*, No. 10-
1497, 2012 U.S. Dist. LEXIS 58110, at *3 (E.D. Pa. Apr. 25, 2012) (no more than vague
allegations that defendant's false marking "stifled competition"); *Pocket Plus, L.L.C. v. Runners
High*, LLC, No. 21-cv-4-CJW, 2021 U.S. Dist. LEXIS 252962, *22 (N.D. Iowa July 26, 2021)
(plaintiff "assert[ed] only that it suffered a competitive injury because Defendant is a direct
competitor in the same industry"); *Norix Grp., Inc. v. Corr. Techs., Inc.*, No. 17-cv-07914, 2018
U.S. Dist. LEXIS 131435, *14-15 (N.D. Ill. Aug. 6, 2018) (emphasis added) (plaintiff failed to
allege that it "***actually*** lost sales, saw profits drop, or experienced any other cognizable injury
because of [defendant]'s false representations").

competitive injury. D.I. 20 at 18-20. Essentially, AWM argues that CAB must allege, at the pleading stage, that AWM's false marking and false advertising were the sole causes of CAB's injuries, to the exclusion of any other factor.[5] But in its FAC, CAB pleads that it is, in fact, AWM's false marking and deceptive advertising that has caused it to suffer injury. And under Rule 12(b)(6), "the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff." *Liqwd, Inc.*, 2019 U.S. Dist. LEXIS 233336, at *10 citing *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008). There is no requirement, and AWM cites to no authority for one, that CAB plead facts in the negative to show that its injury was not due to any other factor. That is more a question of proof, and ultimate proof of causation is not at issue in determining the sufficiency of pleading. *See 10x Genomics, Inc. v. Celsee, Inc.*, No. CV 19-862-CFC-SRF, 2019 U.S. Dist. LEXIS 188516, at *15-16 (D. Del. Oct. 30, 2019), *report and recommendation adopted*, No. CV 19-862-CFC/SRF, 2019 U.S. Dist. LEXIS 198212 (D. Del. Nov. 14, 2019) (determinations of whether a false statement was material to potential customers' purchasing decision "are not properly resolved at this stage of the proceedings, and instead should be addressed through fact discovery").

## V.    CONCLUSION

For the foregoing reasons, CAB respectfully requests that this Court deny AWM's Motion to Dismiss.  In the alternative, if the Court grants AWM's motion in part or in whole, CAB request leave of Court pursuant to Fed. R. Civ. P. 15(a)(2) to file a second FAC.

---

[5] The FAC's allegations that "[i]n addition to its infringement of CAB's patents" AWM's false marking and false advertising practices have "improperly upset the competitive relationship between CAB and AWM," (D.I. 18 at ¶¶ 104, 119) does not detract from a reasonable inference that some or all of CAB's injuries resulted from AWM's false marking/advertising. *See Advanced Fluid Sys., Inc. v. Huber*, 28 F. Supp. 3d 306, 336 (M.D. Pa. 2014) (pleading "permit[ted] an inference that some or all of the missed business opportunities ... resulted from the false advertisements . . .").

Respectfully submitted,

Dated: August 25, 2023

BAYARD, P.A.

OF COUNSEL
Edward C. Flynn
ECKERT SEAMANS CHERIN &
MELLOTT, LLC
600 Grant St., 44th Floor
Pittsburgh, PA 15219
(412) 566-6000
EFlynn@eckertseamans.com

*/s/ Ronald P. Golden III*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

Daniel Melman
ECKERT SEAMANS CHERIN &
MELLOTT, LLC
10 Bank St. Suite 700
White Plains, NY 10606
(914) 949-2909
DMelman@eckertseamans.com

*Attorneys for Plaintiff*
*Cambria County Association for the Blind and*
*Handicapped*

Theodore Y. McDonough
ECKERT SEAMANS CHERIN &
MELLOTT, LLC
2000 Lenox Dr.
Lawrenceville, NJ 08648
(609) 392-2100
TMcDonough@eckertseamans.com

21