**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CAMBRIA COUNTY ASSOCIATION FOR THE BLIND AND HANDICAPPED, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Civil Action No. 23-cv-80-SRF |
| AFFORDABLE WIRE MANAGEMENT, LLC, | ) ) ) |
| Defendant. | ) ) ) |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Dated: April 26, 2024

OF COUNSEL
Edward C. Flynn
ECKERT SEAMANS CHERIN &
MELLOTT, LLC
600 Grant St., 44th Floor
Pittsburgh, PA 15219
(412) 566-6000
EFlynn@eckertseamans.com

Daniel Melman
ECKERT SEAMANS CHERIN &
MELLOTT, LLC
10 Bank St. Suite 700
White Plains, NY 10606
(914) 949-2909
DMelman@eckertseamans.com

Theodore Y. McDonough
ECKERT SEAMANS CHERIN &
MELLOTT, LLC
2000 Lenox Dr.
Lawrenceville, NJ 08648
(609) 392-2100

BAYARD, P.A.

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Plaintiff
Cambria County Association for the Blind and
Handicapped*

TMcDonough@eckertseamans.com

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................................ 1

II.    NATURE AND STAGE OF PROCEEDINGS .............................................................. 2

III.   SUMMARY OF THE ARGUMENT .............................................................................. 3

IV.    STATEMENT OF FACTS ............................................................................................. 3

V.     ARGUMENT ................................................................................................................. 6

  A.   Legal Standards ............................................................................................................. 6

    1.   Rule 12(c) ................................................................................................................ 6

    2.   Section 101 .............................................................................................................. 7

  B.   Step 1:  The Claims of the '551 Patent Are Not Directed to a Law of Nature and/or a
      Natural Phenomenon ..................................................................................................... 8

    1.   The Asserted Claims of the '551 Patent Are Directed to an Improved
       Grounding System, Including Specific Components and Specific Configuration
       of Those Components to Achieve the Claimed Grounding System. ...................... 9

    2.   AWM's Reliance on *American Axle* to Support Its Characterization of the
       Claims at an Impermissibly High Level of Abstraction is Misplaced. ................ 13

  C.   Step 2:  The Claims of the '551 Patent Provide an Inventive Concept ........................... 16

    1.   The Improvement Over Prior Art Grounding Systems Confirms the Inventive
       Concept of the '551 Patent Claims. ...................................................................... 17

    2.   Specific Configurations of Even Known Prior Art Elements that Result in an
       Improvement Over the Prior Art Is Sufficient to Satisfy *Alice*'s Step 2 Analysis. 19

VI.    CONCLUSION ............................................................................................................ 20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*10x Genomics, Inc. v. Parse Biosciences, Inc.*,
    No. CV 22-1117, 2023 WL 5975137 (D. Del. Sept. 14, 2023) ............................................16

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016).................................................................................................8, 9

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014)............................................................................................. *passim*

*American Axle & Manufacturing, Inc. v. Neapco Holdings LLC*,
    C.A. No. 15-1168-GBW (Mem. Order) (D. Del. Jul. 28, 2023).............................................15

*American Axle & Manufacturing, Inc. v. Neapco Holdings LLC*,
    967 F.3d 1285 (Fed. Cir. 2019) (Modified Jul. 31, 2020) (cert. denied) ........................ *passim*

*Ancora Techs., Inc. v. HTC Am., Inc.*,
    908 F.3d 1343 (Fed. Cir. 2018).................................................................................................17

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
    788 F.3d 1371 (Fed. Cir. 2015).............................................................................................9

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
    569 U.S. 576 (2013).............................................................................................................7

*Barry v. SeaSpine Holdings Corp.*,
    C.A. No. 21-806-RGA, 2022 WL 605816 (D. Del. Jan. 26, 2022) .........................................15

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016).........................................................................................16, 19

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018).......................................................................................7, 16

*Bilski v. Kappos*,
    561 U.S. 593 (2010).............................................................................................................8

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997).............................................................................................7

*CardioNet, LLC v. InfoBionic, Inc*,
    955 F.3d 1358 (Fed. Cir. 2020)...............................................................................11, 12, 16

*Core Wireless Licensing S.A.R.L. v. L.G. Elecs., Inc.*,
   880 F.3d 1356 (Fed. Cir. 2018)...................................................................................7

*Data Engine Techs. LLC v. Google LLC*,
   906 F.3d 999 (Fed. Cir. 2018)....................................................................................16

*Diamond v. Diehr*,
   450 U.S. 175 (1981).............................................................................................8, 9, 12

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016)................................................................................13

*Intell. Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016)................................................................................19

*Internet Patents Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015)..................................................................................8

*Interval Licensing LLC v. AOL, Inc.*,
   896 F.3d 1335 (Fed. Cir. 2018)................................................................................12

*Mayo Collab. Servs. v. Prometheus Labs., Inc.*,
   566 U.S. 66 (2012).......................................................................................8, 12, 19

*McRO, Inc. v. Bandai Namco Games Am., Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016)................................................................................13

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*,
   827 F.3d 1042 (Fed. Cir. 2016)............................................................................8, 12

*RecogniCorp, LLC v. Nintendo Co.*,
   855 F.3d 1322 (Fed. Cir. 2017)................................................................................16

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)................................................................................12

*Solutran, Inc. v. Elavon, Inc.*,
   931 F.3d 1161 (Fed. Cir. 2019)..................................................................................9

*SynKloud Techs., LLC v. HP Inc.*,
   490 F. Supp. 3d 806 (D. Del. 2020).......................................................................9, 12

*TecSec, Inc. v. Adobe Inc.*,
   978 F.3d 1278 (Fed. Cir. 2020)..................................................................................9

*In re TLI Commc'ns LLC Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016)....................................................................................9

*Turbe v. Gov't of Virgin Islands*,
    938 F.2d 427 (3d Cir. 1991)..................................................................................7

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)..........................................................................16

*Venetec Int'l, Inc. v. Nexus Med., LLC*,
    541 F. Supp. 2d 612 (D. Del. 2008).....................................................................6

*Wildcat Licensing WI LLC v. Faurecia S.A.*,
    C.A. No. 19-839-MN-JLH, C.A. No. 19-846-MN-JLH, 2019 WL 7067090 (D.
    Del. Dec. 23, 2019) .............................................................................................13

*Wolfington v. Reconstructive Orthopaedic Assocs. II PC*,
    935 F.3d 187 (3d Cir. 2019)..................................................................................6

**Statutes**

35 U.S.C. § 101 .................................................................................... *passim*

35 U.S.C. § 292 ..............................................................................................2

15 U.S.C. § 1051 et seq...................................................................................2

**Other Authorities**

Fed. R. Civ. P. 12(c) .................................................................................6, 20

I.    **INTRODUCTION**

Defendant Affordable Wire Management, LLC ("AWM") moves for judgment on the pleadings, D.I. 43, on the grounds that U.S. Patent No. 10,177,551 (the "'551 Patent"), one of two patents asserted by Plaintiff Cambria County Association for the Blind and Handicapped, Inc. ("CAB") against AWM, is patent-ineligible under 35 U.S.C. § 101.  Relying principally, if not, in essence, entirely, on *American Axle & Manufacturing, Inc. v. Neapco Holdings LLC*, 967 F.3d 1285 (Fed. Cir. 2019) (Modified Jul. 31, 2020) (cert. denied), AWM argues that every single claim of the '551 Patent is directed to a natural phenomenon and/or law of nature (whether either or both, it is not clear).  D.I. 44 at 7, 11.[1]

But the '551 Patent is not directed to either a natural phenomenon or a law of nature.  The claims of the '551 Patent are directed to a new and specific kind of grounding *system* for a suspended cable assembly, and to *physical components* of that grounding system, that result in significant *improvements* over prior art grounding systems. In attempting to stretch the limited holding of *American Axle* beyond its bounds, indeed, in the opposite direction of that holding, AWM characterizes the claims at an impermissibly high level of abstraction, urging that they claim nothing more than a "monopoly over qualities of electricity – electric potential and grounding . . . ."  *Id*.  AWM wholly ignores the explicit recitation in the claims of specific and unconventional system components, as well as the specific configuration and arrangement of those system components, all of which are requisite to the improved grounding system of the '551 Patent.  As set forth more fully below, there is no basis under *American Axle*, or any other applicable caselaw, for holding the claims of the '551 Patent to be patent-ineligible.  To the

---

[1] Page numbers referenced herein refer to the page number assigned by the ECF system.

contrary, it is AWM's motion, not the '551 Patent, that fails under controlling Section 101 authority.

## II.    <u>NATURE AND STAGE OF PROCEEDINGS</u>

On January 23, 2023, CAB filed its Complaint against AWM alleging that AWM infringed the '551 Patent and U.S. Patent No. 11,349,291 (the "'291 Patent").  D.I. 1.  On June 22, 2023, AWM filed a motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). D.I. 15, 16.  CAB filed its Amended Complaint on July 17, 2023, again alleging claims against AWM for direct, indirect and willful infringement of the '551 Patent and the '291 Patent, and adding claims for false patent marking under 35 U.S.C. § 292, and false advertising under the Lanham Act, 15 U.S.C. § 1051 *et seq*.  D.I. 18.

On August 11, 2023, AWM filed a partial motion to dismiss CAB's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), specifically seeking the dismissal of the Amended Complaint's asserted claims for induced, contributory, and willful infringement claims (Counts I and II), false patent marking (Count III), and false advertising (Count IV).  D.I. 19, 20.  The parties fully briefed AWM's motion.  D.I. 22, 23.  On March 28, 2024, the Court issued a Memorandum Opinion and Order denying AWM's partial motion to dismiss in its entirety.  D.I. 40, 41.  Thereafter, AWM filed its Answer to the Amended Complaint.  D.I. 42.

In the meantime, pending disposition of AWM's motion to dismiss, the Court entered a Scheduling Order on September 25, 2023, and a Stipulated Protective Order on October 13, 2023.  D.I. 26, 29.  The parties have since exchanged the initial disclosures required by Fed. R. Civ. P. 26(a) and paragraphs 3 and 4 of this Court's Default Standard.  The parties are currently engaged in the exchange of proposed claim terms for construction, and proposed constructions for those claim terms, in the lead up to claim construction briefing.  D.I. 26.

AWM now moves for judgment on the pleadings under Rule 12(c), asserting that the claims of the '551 Patent are patent-ineligible under 35 U.S.C. § 101.  D.I. 43, 44.  CAB hereby opposes the motion for judgment on the pleadings as being devoid of merit.

### III.  SUMMARY OF THE ARGUMENT

1.      The '551 Patent's claims are not directed to either a natural phenomenon or law of nature, but rather, are directed to an improvement to a specific type of grounding system for a suspended cable assembly not known in the prior art.  The claims are further directed to unconventional physical components of that grounding system, including a single "multi-function line" that both supports current wires and cable hangers and acts as a grounding conductor for the system, and "multi-function line couplings" that, when coupled to the "multi-function line," are structured to define a conductive path. The claimed grounding system and system components obviate the need for a separate grounding conductor wire disposed adjacent a messenger wire, and for yet additional conductors spliced from the separate grounding conductor wire to conductive piles, as used in the prior art.

2.      Even if it were necessary to engage in *Alice's* step 2 analysis, which it is not, the '551 Patent claims directed to a grounding system not known in the prior art, together with unconventional system components structured and configured in a unique way to provide a path to ground, provide an inventive concept that amounts to significantly more than simply applying a law of nature.

### IV.  STATEMENT OF FACTS

The '551 Patent, entitled "GROUNDING SYSTEM," was filed on October 5, 2017, and issued on January 8, 2019.  D.I. 18-1.  The '551 Patent discloses that its claimed concept is related to a grounding system specifically for a suspended cable assembly for supporting

electrical cables extending from a power source, where the electrical cables are supported by cable hangers suspended from a messenger wire, and where the messenger wire is supported by a support assembly that includes a number of poles or piles.  D.I. 18-1, 1:7-24.  As explained in the '551 Patent,

> [f]or example, solar plants comprise large arrays of solar panels spread out over a large area.  The solar panels are supported by a racking assembly coupled to a pile or other support.  The solar panels collect the sun's rays causing a current to flow to current wires that are attached to the solar panels.
>
>         \*\*\*
>
> The bundle of current wires is supported by a series of cable hangers suspended from a messenger wire.  The messenger wire is supported by a number of piles extending adjacent the solar panels or which support the solar panels.

*Id.*, 1:36-59.

The specification further explains that prior art systems required a separate grounding conductor disposed adjacent to the messenger wire. The purpose of this separate grounding conductor was to provide a current path to ground to protect against, for example, lightning strikes to the messenger wire, current wires, solar electrical equipment, support piles and other constructs coupled to such elements, or to protect against a short or undesirable current in the supported current wires.  *Id.*, 1:28-31, 1:60-2:7.  As also described in the specification, the separate grounding conductor disposed adjacent to the messenger wire in the prior art grounding systems also needed to be grounded, by splicing yet another conductor, such as a copper wire, into the grounding conductor and coupling the copper wire to a grounding cable or conductive pile – a difficult, time-consuming and expensive process:

> Presently, the grounding conductor is grounded by splicing a conductor, such as, but not limited to, a copper wire into the grounding conductor and coupling the copper wire to a grounding cable or, if the piles are conductive, to each pile.  That is, the copper wire must be spliced into the grounding conductor, *i.e.*, a 'grounding splice,' and, then electrically coupled to the pile or a ground cable.  The process of installing the conductors, *i.e.*, splicing the copper wire into the grounding conductor

and making an electrical coupling with the pile is difficult, time consuming and expensive.  These are problems of the known art.

There is, therefore, a need for a grounding system that is less expensive and which can be installed quickly and easily.

*Id.*, 2:6-18.

The '551 Patent addresses this need by claiming a new, useful, and improved grounding system.  The grounding system of the '551 Patent includes a multi-function line assembly that includes a multi-function line, together with a number of conductive mounting assemblies, with each conductive mounting assembly structured to be coupled to the multi-function line and to a conductive pile. This configuration provides a path to ground for a current in the multi-function line assembly.  *Id.*, 2:27-33.  Unlike the messenger wire and separate grounding conductors and ground splices of the prior art grounding systems, the '551 Patent defines the multi-function line as "a **single** multi-function line [that] supports the cable hangers, **as a messenger wire**, **and** provides a current path, **as a grounding conductor**.  *Id.*, 2:33-44 (emphases added).  The grounding system and configuration claimed by the '551 Patent, therefore, addresses the problems with the prior art grounding systems for suspended cable assemblies.  *Id.*, 2:43-44.

The claims of the '551 Patent embody these objectives. Independent claim 1 recites:

A grounding system structured to ground a number of cables supported by a support assembly, said support assembly including a plurality of spaced, conductive piles, said grounding system comprising:

a multi-function line assembly including **a multi-function line**;
a number of **conductive mounting assemblies**, each said conductive mounting assembly **structured to be coupled to said multi-function line and to a conductive pile**; and
wherein said multi-function line assembly **is coupled to, and in electrical communication with,** said number of conductive mounting assemblies.

*Id.*, 12:11-23 (emphases added).

Dependent claim 2 further limits the grounding system of claim 1 by reciting that "each said conductive mounting assembly includes . . . a number of multi-function line couplings; and

each said multi-function coupling defines a conductive path." *Id.*, 12:24-29 (emphasis added). Further, dependent claims 9 and 10 recite that the claimed multi-function line assembly **does not include any grounding or medial grounding splices**, respectively. *Id.*, 12:51-56 (emphasis added), *see also* dependent claims 15 and 16. *Id.*, 13:4-9.

Independent claim 19 is directed to the claimed mounting assembly for the claimed grounding system:

> A mounting assembly for a grounding system structured to ground a number of cables supported by a support assembly, said support assembly including a plurality of spaced, conductive piles, said grounding system including a multi-function line assembly with a multi-function line, said mounting assembly comprising:
>> a mounting body, a support coupling, and a number of multi-function line couplings;
>> each said multi-function line couplings structured to be coupled to said multi-function line;
>> each said support coupling structured to be coupled to a conductive pile; and
>> wherein, **when said multi-function line assembly is coupled to, and in electrical communication with said multi-function line couplings, each said multi-function line coupling defines a conductive path.**

D.I. 18-1, 13:16-31 (emphasis added).

## V.   ARGUMENT

### A.   Legal Standards

#### 1.   Rule 12(c)

When considering a Rule 12(c) motion for judgment on the pleadings, the Court must accept all factual allegations as true, and to view all inferences drawn therefrom in the light most favorable to the nonmoving party. *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 193, 195 (3d Cir. 2019). "The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." *Venetec Int'l, Inc. v.*

*Nexus Med., LLC*, 541 F. Supp. 2d 612, 617 (D. Del. 2008); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  A motion for judgment on the pleadings can be granted "only if no relief could be granted under any set of facts that could be proved." *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).  In the context of motions based on Section 101, whether a claim recites patent eligible subject matter is ultimately a question of law which may contain underlying facts.  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367-68 (Fed. Cir. 2018).  "Any fact … that is pertinent to the invalidity of conclusion must be proven by clear and convincing evidence."  *Id.* at 1368.

### 2.     Section 101

Section 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor."  35 U.S.C. § 101.  The Supreme Court has explained that there are three types of subject matter that are not patent-eligible: "Laws of nature, natural phenomena, and abstract ideas are not patentable."  *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)).

In *Alice*, the Supreme Court articulated a two-step test for determining whether a patent claims eligible subject matter.  Step 1 requires the Court to determine whether the claims are directed to one of the three patent-ineligible concepts.  *Alice*, 573 U.S. at 217.  If the claims are not directed to a patent-ineligible concept, "the claims satisfy § 101 and [the Court] need not proceed to the second step."  *Core Wireless Licensing S.A.R.L. v. L.G. Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018).  If the claims are directed to a patent-ineligible concept, then the Court proceeds to *Alice* step 2, where it considers "the elements of each claim both individually

and as an 'ordered combination'" to determine whether there is an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than the [ineligible concept] itself.'" *Alice*, 573 U.S. at 218-219 (quoting *Mayo Collab. Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72-73 (2012)) (alteration in original).

**B.** **Step 1:  The Claims of the '551 Patent Are Not Directed to a Law of Nature and/or a Natural Phenomenon.**

At step 1, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015).  *See also Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) ("The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter.").  In rejecting attempts to invalidate a claim at step 1, courts have made clear that "it is not enough to merely identify a patent-ineligible concept underlying the claim; [courts] must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

The Supreme Court has recognized that "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo*, 566 U.S. at 71.  In order "to transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id*. at 72.  But while a fundamental principle cannot be patented, "an *application* of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection," *Bilski v. Kappos*, 561 U.S. 593, 612 (2010) (quoting *Diamond v. Diehr*, 450

8

U.S. 175, 187 (1981)) (internal quotations omitted), provided that the claimed application would not preempt substantially all uses of the fundamental principle.  *Diamond*, 450 U.S. at 200, 203.

> 1.    **The Asserted Claims of the '551 Patent Are Directed to an Improved Grounding System, Including Specific Components and Specific Configuration of Those Components to Achieve the Claimed Grounding System.**

Under the *Alice* step 1 "directed-to" inquiry, the Court analyzes "what the patent asserts to be the focus of the claimed advance over the prior art."  *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019) (internal quotations omitted).  This analysis considers whether the claim's "character as a whole" is directed to ineligible subject matter.  *Affinity Labs of Tex., LLC*, 838 F.3d at 1257-58.  The directed-to inquiry focuses on the claim language itself, "**considered in light of the specification**[.]"  *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020) (emphasis added).  As this Court has recognized, the specification is a helpful source of evidence for the "directed to" inquiry.  *SynKloud Techs., LLC v. HP Inc.*, 490 F. Supp. 3d 806, 811 (D. Del. 2020) (citing *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611-12 (Fed. Cir. 2016); *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1376 (Fed. Cir. 2015)).

Here, the claims of the '551 Patent are not directed to a natural phenomenon or law of nature.  They are directed to a specific type of **grounding system**, i.e., a grounding system structured to ground a number of cables supported by a support assembly, and to specific and **unconventional physical components** of that grounding system **configured in a particular way**.  D.I. 18-1, 1:7-24.  Specifically, independent claims 1 and 19 recite an unconventional "multi-function line," which AWM acknowledges is intended "**to replace a conventional messenger wire.**" D.I. 44, at 9 (emphasis added).  As also acknowledged by AWM (*see* D.I. 44, at 10), the claimed multi-function line is not simply a messenger wire known in the prior art to provide only support functionality; as defined by the '551 Patent, the claimed multi-function line

is a **single** multi-function line that provides the dual functionality of "support[ing] the cable hangers, **as a messenger wire**, **and** provid[ing] a current path, **as a grounding conductor**." *Id.*, 2:33-44 (emphases added).

This is not merely a "rebrand" of a conventional messenger wire, as AWM would have it (D.I. 44, at 20); indeed, the '551 Patent explicitly makes clear that a conventional messenger wire that simply provides support functionality is **not** a multi-function line. D.I. 18-1, 2:40-41. Rather, a single multi-function line that provides support as a messenger wire **and** serves as a grounding conductor for the system is unknown in the prior art. It is unique to the '551 Patent. As discussed above, the claimed multi-function line dispenses with the need for the difficult, time-consuming and expensive implementation of a grounding system that requires a grounding conductor separate from the messenger wire, and separate grounding splices from the grounding conductor to each conductive pile. At least in this way, it provides for a grounding system that is significantly improved over prior art grounding systems.

And the claims of the '551 Patent are not limited to a multi-function line. The claims require other physical components – conductive mounting assemblies that include mounting bodies, support couplings and multi-function line couplings. The claims further require that those physical components be configured in a specific arrangement – the multi-function line assembly that includes a multi-function line must be coupled to the conductive mounting assemblies, and particularly to the multi-function line couplings, and the conductive mounting assemblies, including the multi-function line couplings, must be coupled to spaced conductive

10

piles.  It is in this this specific configuration that the multi-function line couplings define a specific conductive path to ground.  D.I. 2:27-33; 12:24-29; 13:16-31.[2]

The dependent claims further confirm that the multi-function line assembly does not include any grounding or medial grounding splices. D.I. 18-1, 12:51-53 (dependent claim 9); 12:54-56 (dependent claim 10); 13:4-6 (dependent claim 15); 13:7-9 (dependent claim 16). Thus, the dependent claims also make clear that there is no need for the improved grounding system to use the problematic, cumbersome and expensive separate grounding conductor and grounding splices.  Additionally, the dependent claims further specify the components of the claimed grounding system.  *See, e.g.*, D.I. 18-1, 12:24-29 (wherein claim 2 details the physical features of the conductive mounting assembly).  *See also CardioNet, LLC v. InfoBionic, Inc*, 955 F.3d 1358, 1369 (Fed. Cir. 2020) ("The dependent claims are similarly directed to patent-eligible subject matter, as they further specify the physical features or operation of the device of claim 1.").

To reduce the claims to no more than connecting generic metal components to each other, as AWM does (*see* D.I. 44, at 10, 15-16), is not a rebranding of the claims, it is a mischaracterization of them. Contrary to AWM's assertions, the claims provide unconventional components (e.g., the multi-function line that AWM acknowledges is intended to replace conventional messenger wires) coupled to other system components in a specific configuration so as to allow a conductive path to ground, without the need for the grounding conductors and

---

[2] AWM states that claim 19 differs from claim 1 "only in that it calls for additional conductive components on a mounting assembly."  That is simply a misreading of the claim.  As set forth above, claim 19 recites a mounting assembly for the claimed grounding system that is structured and configured in a particular way such that when the multi-function line assembly is coupled to and in electrical communication with the multi-function line couplings of the conductive mounting assembly, which in turn are structured to be coupled to the conductive piles, the multi-function line couplings in this specific configuration define a conductive path to ground.

grounding splices of the prior art, and resulting in a substantial improvement over the prior art. The '551 Patent does not, as AWM suggests, simply claim the principles of "grounding" or "electric potential" and then say "apply it." *Mayo*, 566 U.S. at 72.  Though grounding and electric potential may well underlie the invention of the '551 Patent, the claims of the '551 Patent are not **directed** to those principles.  *Rapid Litig. Mgmt. Ltd.*, 827 F.3d at 1050.

Nor do the claims preempt all ways of achieving "grounding." Indeed, the prior art's use of grounding splices from the separate grounding conductor to each conductive pile is outside the scope of the '551 Patent.  The '551 Patent's claims are limited to a specific, improved grounding system.  *See, e.g.*, *SynKloud Techs.*, 490 F. Supp. 3d at 811 (citing *Mayo*, 566 U.S. at 72; *Alice*, 573 U.S. at 223 (noting "the preemption concern that undergirds our § 101 jurisprudence")). The specific and unique system components and arrangements recited in the claims are in contrast to the mere application of a law of nature and/or natural phenomenon.  *Compare Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1345-46 (Fed. Cir. 2018) (claims ineligible "because they consist[ed] of generic and conventional information acquisition and organization steps that are connected to, but do not convert, the abstract idea … into a particular conception of **how to carry out** that concept") (emphasis added) *with Diamond*, 450 U.S. at 187-88, 191-92 (mathematical formula itself was not patent eligible, however, the claimed invention involved a new process with a specific and detailed series of steps (one of which included the use of natural law) that limited the possibility of preempting the natural law itself).  Thus, the claims "ha[ve] the specificity required to transform [the] claim from one claiming only a result to one claiming a way of achieving it" and are therefore not patent ineligible.  *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018); *see also CardioNet, LLC*, 955 F.3d at 1368 (reading the patent "as a whole", and reviewing the specification to "confirm[]" the Court's conclusion of eligibility,

specifically finding that "[t]he written description confirms … that … the claimed invention achieves multiple technological improvements").

> ### 2. AWM's Reliance on *American Axle* to Support Its Characterization of the Claims at an Impermissibly High Level of Abstraction is Misplaced.

AWM's motion depends entirely on its attempt to characterize the claims of the '551 Patent in a broad, generalized, and impermissibly high level of abstraction in order to assert that the claims are directed to a law of nature and/or a natural phenomenon. AWM tortures the claim language to argue that the '551 Patent discloses "a first piece of metal" that is connected to "a second piece of metal" that is connected to a "third piece of metal." D.I. 44, at 15-16. AWM goes to great lengths to describe the '551 Patent at an abstract level, but, tellingly, fails to even clearly identify the law of nature or the natural phenomenon to which the '551 Patent is purportedly directed, and even uses the phrases law of nature and natural phenomenon interchangeably. *See, e.g.*, D.I. 44, at 7 ("**Electric potential** is the elementary **natural phenomenon or law of nature**") (emphasis added).

The Federal Circuit has cautioned that "describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallows the rule." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) (citing *Alice*, 573 U.S. at 217). Accordingly, the Federal Circuit has proscribed "'oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims." *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016). AWM's reduction of each of the specific claimed components of the '551 Patent to a "piece of metal" is a grossly exaggerated oversimplification of claims. *See, e.g.*, *Wildcat Licensing WI LLC v. Faurecia S.A.*, C.A. No. 19-839-MN-JLH, C.A. No. 19-846-MN-

13

JLH, 2019 WL 7067090, at *5 (D. Del. Dec. 23, 2019) (denying motion to dismiss under Section

101 where the defendant "failed to adequately characterize the idea to which the claims were

directed, including when the defendant oversimplified the idea of the claims").

In further attempt to shoehorn the claims of the '551 Patent into a class of claims directed

to patent-ineligible subject matter, AWM's motion relies upon *American Axle & Manufacturing,*

*Inc. v. Neapco Holdings LLC*, 967 F.3d 1285 (Fed. Cir. 2019) (Modified Jul. 31, 2020) (cert.

denied), as "instructive, if not dispositive."  D.I. 44, at 16.  AWM's reliance is misplaced.

First, the claim declared to be patent ineligible (claim 22) in *American Axle* is completely

distinguishable from the '551 Patent claims. Claim 22 at issue there was found to be patent

ineligible because it merely required use of a natural law (Hooke's law), and the claimed result

could be achieved "by one skilled in the art by using **any** method, including **any method**

**implemented by computer modeling and trial and error**."  *Am. Axle*, 967 F.3d at 1294

(emphasis added).  In contrast, the '551 Patent claims a specific type of grounding system and

specific components arranged in a particular configuration.  Furthermore, in *American Axle*,

claim 22 "neither established processes nor '**improved**' processes for implementing the

underlying natural laws."  *Id.* at 1294-95 (emphasis added).  Again, in contrast, the '551 Patent

claims specific improvements by including unconventional components and arranging the

components in a way that improves on the prior art. What the Federal Circuit found was

"missing" from claim 22 in *American Axle* is precisely what is claimed in the '551 Patent –

"physical structure or steps for achieving the claimed result." *Id.*

Importantly, in *American Axle*, the Federal Circuit distinguished between ineligible claim

22 and claim 1, which the court found not to be ineligible.  *Id.* at 1300. The Federal Circuit

overturned the District Court's ruling that claim 1 was ineligible because, unlike claim 22, claim

1 recited certain variables other than the variables making up Hooke's Law, and had an additional limitation, namely, "'positioning the at least one liner'" in addition to the result obtained by merely applying Hooke's Law.[3]  *Id.*  Thus, claim 1 in *American Axle* is more analogous to the '551 Patent claims, which claim various components and specific configuration limitations to achieve the claimed grounding system.  *See Barry v. SeaSpine Holdings Corp.*, C.A. No. 21-806-RGA, 2022 WL 605816, at *3 (D. Del. Jan. 26, 2022) ("Unlike the claim in *American Axle*, claim 6 recites a specific configuration of surgical tools and steps for achieving the claimed result.").  Therefore, even *American Axle* itself, which AWM purports is "dispositive" of the Section 101 issue, makes clear in its analysis that the '551 Patent claims are patent-eligible.

Second, the Federal Circuit's holding in *American Axle* is expressly limited.  Specifically, the majority made clear that "[t]his holding as to step 1 of *Alice* extends only where, as here, a claim on its face clearly invokes a natural law, **and nothing more**, to achieve a claimed result." *American Axle*, 967 F.3d at 1298 (emphasis added); *see also id.*, at 1301.  As described above, the claims of the '551 Patent, by contrast, claim far more than invoking a natural law "and nothing more" to accomplish the claimed grounding system.  AWM fails to heed the Federal Circuit's admonition that "[t]o be clear, however, our holding should not be read as an invitation to raise a validity challenge against any patent claim that requires the application of an unstated natural law[.]"  *Id.*

---

[3] Ultimately, on remand, claim 1 was upheld as patent eligible.  Mem. Order at 18, *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, C.A. No. 15-1168-GBW (D. Del. Jul. 28, 2023) (granting summary judgment and finding that claim 1 was patent eligible).

For the foregoing reasons, the '551 Patent's claims are not drawn to the patent-ineligible concept of a law of nature or natural phenomenon and, therefore, the '551 Patent is not invalid for claiming ineligible subject matter.

### C.    Step 2:  The Claims of the '551 Patent Provide an Inventive Concept.

Since the '551 Patent does not claim a law of nature or natural phenomena, the Court need not reach step 2 of the *Alice* analysis.  *See CardioNet, LLC*, 955 F.3d at 1368 (citing *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018)) ("If the claims are not directed to a patent-ineligible concept under *Alice* step 1, 'the claims satisfy § 101 and we need not proceed to the second step.'").  However, even should the Court reach step 2, this step is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry."  *Berkheimer*, 881 F.3d at 1367 (quoting *Alice*, 573 U.S. at 225).  "To save a patent at step two, an inventive concept must be evident in the claims."  *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017) (citing *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017)).  "[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."  *10x Genomics, Inc. v. Parse Biosciences, Inc.*, No. CV 22-1117, 2023 WL 5975137, at *5 (D. Del. Sept. 14, 2023) (citing *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016)). "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact."  *Berkheimer*, 881 F.3d at 1368.

**1.      The Improvement Over Prior Art Grounding Systems Confirms the Inventive Concept of the '551 Patent Claims.**

As discussed above, the claimed grounding system of the '551 Patent employs a non-conventional and non-generic arrangement, which significantly improves upon the prior art for grounding systems.  As further described above in more detail (Sections IV., V.B.1.), the claims of the '551 Patent address the need for a less expensive grounding system which can be installed quickly and easily.  Specifically, the claimed multi-function line is coupled to multi-function line couplings, which in turn are structured to be coupled to spaced conductive piles.  The multi-function line couplings thereby define a conductive path to ground without the need for a separate grounding conductor disposed adjacent to the messenger wire or with the electrical cables, as well as separate grounding splices from the grounding conductor to each conductive pile.  D.I. 18-1, 1:7-13; 1:60-2:44.

These improvements over the prior art are sufficient to provide an inventive concept in the context of the *Alice* step 2 analysis.  *See Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1349 (Fed. Cir. 2018) ("The claimed invention addressed the disadvantages of the prior art …. In holding the claimed invention eligible under *Alice* step two, we reasoned that although [the system] was already a known concept, ... the patent describes how its particular arrangement of elements is a technical improvement over the prior art... [.]").  Similarly, the '551 Patent does not merely apply a natural phenomenon or law of nature to generic, unconventional prior art components.  Instead, the '551 Patent's unconventional components and particular arrangement of components results in technical improvements over the prior art.

AWM's attempts at paralleling the '551 Patent claims to the patent-ineligible claims in *American Axle* are unavailing and misguided.  In *American Axle*, there were no claimed novel components (the liners within the driveline system already existed), and the disputed patent

17

claim merely called for the application of Hooke's law, without anything more, to achieve the desired result (i.e., to tune the liners). *Am. Axle*, 967 F.3d at 1290.  In short, beyond the application of natural law, the invalid claim at issue in *American Axle* did not claim anything more.  This is wholly inapposite to the '551 Patent, which claims a new, unique "**single** multi-function line [which] supports the cable hangers, as a messenger wire, **and** provides a current path, as a grounding conductor."  D.I. 18-1, 2:35-37 (emphasis added).

The fallacy of AWM's entire argument at Step 2 is its characterization of the multi-function line as "nothing more than a rebrand of the previously employed messenger wire."  D.I. 44, at 20.  This assertion is an overreach that willfully ignores the novel, unconventional nature of the multi-function line of the '551 Patent.  It also directly contradicts AWM's earlier assertion that the claimed multi-function line "purports to **replace** a conventional messenger wire."  *Id.*, at 9.  AWM even goes so far as to state, falsely, that "[t]he '551 Patent further admits that conventional messenger wires are akin to the claimed 'multi-function lines' at least because both support current-carrying cables and messenger wires are made from conductive materials."  D.I. 44, at 19.  AWM ignores the explicit disclosure of the '551 Patent specification that a conventional "messenger wire is not a 'multi-function line,'" D.I. 18-1, 2:40-41, a material omission that undermines the entirety of AWM's motion.  AWM does not, and cannot, point to any of the prior art referenced in the '551 Patent specification that uses a single multi-function line that provides the dual functionality of providing support for cable hangers and serving as a grounding conductor.  The multi-function line that supports cable hangers while simultaneously providing a current path to ground as a grounding conductor is a previously unknown construct, unique to the '551 Patent.

**2.      Specific Configurations of Even Known Prior Art Elements that Result in an Improvement Over the Prior Art Is Sufficient to Satisfy *Alice*'s Step 2 Analysis.**

AWM's mischaracterizations of the disclosures of the '551 Patent aside, AWM's arguments suggest, incorrectly, that utilization of generic or conventional prior art components alone is insufficient for patent eligibility.  Even generic or conventional components, if arranged in a way that provides a technical improvement over the prior art, is sufficient to satisfy the *Alice* step 2 patent eligibility inquiry. *See Intellectual Ventures I LLC v. Symantec Corp.,* 838 F.3d 1307, 1330 (Fed. Cir. 2016) (citing *BASCOM*, 827 F.3d at 1349, 1350) (although "the limitations of the claims, taken individually, recite generic…components," the patent's "particular arrangement of elements is a technical improvement over prior art...").  AWM cites to the Supreme Court's *Mayo* decision to suggest the opposite.  *See* D.I. 44, at 19 (arguing that arranging generic, prior art "is not sufficient to transform an unpatentable law of nature into a patent-eligible application of such a law") (citing *Mayo,* 566 U.S. at 79).  *Mayo* stands for no such proposition.  Rather, the portion of *Mayo* cited by AWM only stands for the proposition – irrelevant here – that "[p]urely 'conventional or obvious' '[pre]-solution activity' is normally not sufficient to transform an unpatentable law of nature into a patent-eligible application of such a law." *Mayo,* 566 U.S. at 79.   That is not the case with the '551 Patent.  Instead, much like *BASCOM*, the '551 Patent "identifie[s] several concrete problems" with prior grounding systems and addresses those shortcomings in the claims.  *Intell. Ventures I LLC*, 838 F.3d at 1330.  The claims of the '551 Patent, therefore, amount to "more than a drafting effort designed to monopolize [grounding]."  *BASCOM*, 827 F.3d at 1350-1351.

VI.     **CONCLUSION**

      For the foregoing reasons, CAB respectfully requests that this Court deny AWM's Rule

12(c) Motion.


Dated: April 26, 2024                                 BAYARD, P.A.

OF COUNSEL                               */s/ Ronald P. Golden III*
Edward C. Flynn                            Stephen B. Brauerman (#4952)
ECKERT SEAMANS CHERIN &            Ronald P. Golden III (#6254)
MELLOTT, LLC                          600 N. King Street, Suite 400
600 Grant St., 44th Floor               Wilmington, DE 19801
Pittsburgh, PA 15219                  Telephone: (302) 655-5000
(412) 566-6000                        sbrauerman@bayardlaw.com
EFlynn@eckertseamans.com            rgolden@bayardlaw.com

Daniel Melman                            *Attorneys for Plaintiff*
ECKERT SEAMANS CHERIN &            *Cambria County Association for the Blind and*
MELLOTT, LLC                          *Handicapped*
10 Bank St. Suite 700
White Plains, NY 10606
(914) 949-2909
DMelman@eckertseamans.com

Theodore Y. McDonough
ECKERT SEAMANS CHERIN &
MELLOTT, LLC
2000 Lenox Dr.
Lawrenceville, NJ 08648
(609) 392-2100
TMcDonough@eckertseamans.com